COURTENAY MERCANTILE CO. v. FINCH, VAN SLYCK & McCONVILLE et al.

(Circuit Court of Appeals, Eighth Circuit. March 7, 1912.)

No. 3,604.

BANKRUPTCY (§ 60*)—ACT OF BANKRUPTCY—"GENERAL ASSIGNMENT FOR THE BENEFIT OF CREDITORS."

An assignment of all of a debtor's property to an assignee, to convert into money and apply to the discharge of debts owing to such creditors as assented thereto and agreed to accept the dividend thereunder in full of their claims, was a "general assignment for the benefit of creditors," such as constitutes an act of bankruptcy under the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. § 60.*]

Appeal from the District Court of the United States for the District of North Dakota.

In the matter of the Courtenay Mercantile Company, bankrupt. From a judgment adjudging bankruptcy (186 Fed. 352), said bankrupt appeals, adversely to Finch, Van Slyck & McConville and others. Affirmed.

George H. Stillman, for appellant.
A. E. Boyesen and H. H. Flor, for appellees.

Before SANBORN and ADAMS, Circuit Judges, and WM. H. MUNGER, District Judge.

WM. H. MUNGER, District Judge. The Courtenay Mercantile Company, a corporation, becoming insolvent in November, 1910, executed and delivered the following instrument:

"Minneapolis, Minn., March 3, 1911.
"Assignment, Courtenay Mercantile Co. to P. S. Preston.
"This agreement, made this 10th day of November, 1910, by and between Courtenay Mercantile Company, a corporation, of Courtenay, in the county of Stutsman, state of North Dakota, party of the first part, and Percival S. Preston, of the city of Minneapolis, county of Hennepin, and state of Minnesota, party of the second part, witnesseth: That the party of the first part, in consideration of the premises and the mutual promises herein contained and the sum of one dollar to it in hand paid by the party of the second part, has granted, bargained, sold, conveyed, and assigned, and by these presents does bargain, grant, sell, convey, and assign, unto said party of the second part, his successors and assigns, forever, all and singular its stock of goods, wares, and merchandise, book accounts, notes and all claims demands, and choses in action, with all evidences thereof and securities thereto pertaining, and all its lands, tenements, and hereditaments, wherever situate, to have and to hold the same unto the said party of the second part, his successors and assigns, forever, in trust, nevertheless, for the uses and purposes following, which the second party agrees to fulfill, to wit:
"(1) To take possession of said property, and to sell and dispose of same at public or private sale, with all reasonable diligence, and to convert the same into money; also to collect all claims, demands, and bills receivable hereby assigned, or to settle, compromise, and compound any thereof that are doubtful, or to sell and dispose of the same and reduce them to money as soon as may be, and with and out of the proceeds of such sales and collections:
"(2) To pay and discharge all the just and reasonable expenses, costs, and charges of executing and carrying into effect the trust hereby created, including reasonable compensation to the party of the second part for his services and expenses paid or incurred (including counsel fees) in executing the same.
"(3) To pay and discharge in full, if the residue of such proceeds be sufficient, all the debts and liabilities due or owing by the party of the first part, including interest thereon, to those of his creditors who shall become parties hereto by signing this agreement or copy thereof, and who shall in consideration of the premises undertake and agree, upon payment made, whether in whole or in part, as herein provided, to fully release, discharge, and absolve the party of the first part from and of all indebtedness to them, or either of them, now due or owing.
"And if the residue of said proceeds shall not be sufficient to pay said debts and liabilities and interest in full, then to apply the same so far as they will extend pro rata to the payment of said debts and liabilities and interest. And if, after payment as aforesaid, there shall be any surplus, to pay such surplus to the party of the first part, his executors, administrators, or assigns. The words 'party of the first part' herein shall be construed to mean parties of the first part.
"In witness whereof, the said party of the first part has hereunto set his hand and seal the day and year first above written.
                                            "Courtenay Mercantile Co.,
    "[Corporate Seal.]                        By J. B. Durkee, President."

This instrument was duly acknowledged and filed for record. Thirty-eight creditors, whose claims aggregated a little over $7,000, accepted the terms of the instrument. Twenty-four creditors, whose claims aggregated a little over $40,000, either refused or failed to signify their acceptance. On the 30th of January, 1911, certain creditors filed a petition in bankruptcy, praying that the said Mercantile Company be adjudged bankrupt, charging as the act of bankruptcy that on the 10th day of November, 1910, it made a general as-

signment for the benefit of its creditors to one Percival S. Preston, being the instrument heretofore mentioned. The Courtenay Mercantile Company filed its answer to the petition in involuntary bankruptcy, denying that it committed the act of bankruptcy alleged, or that it was insolvent. The case came on for trial, and was heard upon a stipulation as to the facts—the stipulation showing that, by the instrument above mentioned, the Courtenay Mercantile Company conveyed to Preston all of its property of every kind and nature; that the above-mentioned instrument was executed by the Courtenay Mercantile Company and delivered to Preston pursuant to a resolution of the board of directors of the Courtenay Mercantile Company; that Preston accepted the trust, and entered upon the discharge of his duties as trustee. The court held that the foregoing instrument was a general assignment within the meaning of the bankrupt law, and hence an act of bankruptcy, and adjudged the company a bankrupt. The Courtenay Mercantile Company brings the case here on appeal, and the single question is presented as to whether the above agreement was a general assignment within the meaning of the bankrupt law.

It is first to be observed that the instrument conveyed all of the property of the alleged bankrupt to a trustee, who was not a creditor, and for the benefit of creditors. No right of redemption remained, and bankrupt retained no interest, excepting to receive whatever property, if any, should remain after the entire payment of its indebtedness. In re Thomlinson Company, 154 Fed. 834, 83 C. C. A. 550, this court, passing upon the question as to what was a general assignment within the meaning of the bankrupt law, said:

"The 'general assignment' there contemplated is to be taken in its generic sense, and embraces any conveyance at common law or by statute by which the parties intend to make an absolute and unconditional appropriation of the property conveyed to raise funds to pay the debts of the vendor, share and share alike. Appolos v. Brady, 1 C. C. A. 299, 49 Fed. 401; Bartlett v. Teah (C. C.) 1 Fed. 768; In re Gutwillig (D. C.) 90 Fed. 475; Id., 34 C. C. A. 377, 92 Fed. 337; In re Sievers (D. C.) 91 Fed. 366; Davis v. Bohle, 34 C. C. A. 372, 92 Fed. 325. Such a conveyance inevitably thwarts operation of the bankruptcy act. * * * The instrument in question does not contain any of the elements of a mortgage, as insisted upon by bankrupt's counsel. The idea that it was intended as a security for the ultimate payment of the debts of the vendor, or that a reservation of a right to redeem whenever the vendor shall pay its debts was intended, is not remotely suggested by any of the terms of the instrument; in other words, there is no right of redemption reserved. The provision at the end of the instrument, requiring a surplus, if any, to be paid to the vendor, cannot be regarded as such reservation. It is nothing more than an expression of what the law implies. If, after all the property had been disposed of, and all the creditors had been fully paid, and all the expenses satisfied, any surplus remained, it belonged as a matter of law to the debtor, and no formal statement to that effect can change the legal and obvious import of the instrument from a general assignment for the payment of debts to a provision for their security in the nature of a chattel mortgage."

The rule thus announced is entirely applicable to the instrument executed by the Courtenay Mercantile Company; the only difference between the two being that, in the instrument of the Courtenay Mercantile Company, there was a provision that the proceeds should be distributed among the creditors who accepted the terms of the instru-

ment. This certainly did not change its character. So far as the Courtenay Mercantile Company was concerned, they conveyed all their property to the trustee for the benefit of their creditors, and the instrument speaks of the date of its execution and delivery. It could not be known at that time but that all of the creditors would accept its provisions. Had all the creditors accepted, it certainly would have operated as a general assignment. We do not think that the question as to whether an instrument of that character constitutes a general assignment or a mortgage is dependent upon the subsequent event of its acceptance by each and all of the debtor's creditors. In Griffin v. Dutton, 165 Fed. 626, 91 C. C. A. 614, the Court of Appeals of the First Circuit, said:

"Nor is it necessary that the assignment should be valid for all purposes; as, for instance, that the creditors should assent thereto. The language of the bankruptcy act is general. It makes no distinction between strictly valid instruments and those which may be invalid for certain purposes. To limit its operation to those assignments which are in all respects valid would be contrary to the intent and purpose of the act."

To the same effect, see In re Meyer, 98 Fed. 976, 39 C. C. A. 368. It is established by the foregoing authorities that a general assignment for the benefit of creditors, within the inhibition of the bankrupt law, need not necessarily be one which is valid according to the state law. If its legal effect is a transfer of all the debtor's property to a trustee for the benefit of all creditors, share and share alike, who shall come in and prove their claims, and thus accept its terms, it constitutes a general assignment.

We are cited to the case of Joas v. Jordan, 21 S. D. 379, 113 N. W. 73, where the Supreme Court of South Dakota, construing a similar instrument, held that it was not an assignment, but a mere security, as it was for the benefit only of those creditors who assented to its conditions. The court in that case was construing an instrument with reference to the statutory laws of that state, and was not dealing with the question of an assignment under the bankrupt law. Our attention has not been called to any case by the Supreme Court of North Dakota holding that such an instrument is a security in the nature of a chattel mortgage.

We are clearly of the opinion that the instrument in question was a general assignment for the benefit of creditors, within the purview of the bankrupt law, and the decree is affirmed.