**DAVIS, Director General of Railroads, v. MICHIGAN TRUST CO.**

(Circuit Court of Appeals, Sixth Circuit. November 11, 1924.)

No. 4028.

**I. United States** ⬤⟺76—**Government's right to priority held not to extend to receivership, though circumstances are sufficient to make appointment an act of bankruptcy.**

Under Rev. St. § 3466 (Comp. St. § 6372), government's right to priority over other creditors does not extend to equity proceedings wherein receiver is appointed, though circumstances are sufficient to make such appointment an act of bankruptcy.

**2. United States** ⬤⟺76—**Director General not entitled to assert governmental priority on claims arising from governmental operation of railroads.**

Under Federal Control Act, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾j). Director General is not entitled to assert governmental priority over other creditors on claims arising out of governmental operation of railroads.

Appeal from the District Court of the United States for the Western District of Michigan; Clarence W. Sessions, Judge.

In the matter of the receivership of the Rathbone Manufacturing Company. From a judgment denying priority of claim filed by James C. Davis, Director General of Railroads and Agent of the United States Railroad Administration (Grand Rapids & Indiana Railroad), opposed by the Michigan Trust Company, receiver, claimant appeals. Affirmed.

George Douglas Clapperton, of Grand Rapids, Mich. (Clapperton & Owen, of Grand Rapids, Mich., on the brief), for appellant.

W. Deveré Bryant, of Grand Rapids, Mich. (Knappen, Uhl & Bryant, of Grand Rapids, Mich., on the brief), for appellee.

Before DENISON and MACK, Circuit Judges, and SATER, District Judge.

MACK, Circuit Judge. This is an appeal from the decree of the District Court denying priority to the claim filed by the Director General for freight, demurrage, and switching charges, in the distribution of the assets in the hands of the receiver in equity of the Rathbone Manufacturing Company.

The receiver had been appointed, with the consent of the company, on the usual creditor's bill, alleging the inability of the company to pay its liabilities in due course. The bill did not allege insolvency in the bankruptcy sense; on the contrary, it alleged, on information and belief, that the going concern value of the defendant's assets exceeded the amount of its liabilities, and that, if the assets of the company were properly handled and conserved by a receiver, creditors could probably be paid in full, with a possible surplus for stockholders. It is now admitted by stipulation that at the time of the appointment of the receiver the company was in fact insolvent in the bankruptcy sense, in that the aggregate of

its property and assets at a fair valuation was then insufficient in amount to pay its debts; it is not admitted or shown, however, that at that time either the company or the plaintiff creditor knew of such insolvency.

The claim of the Director General for priority is based upon section 3466 of the United States Revised Statutes (Comp. St. § 6372), which reads as follows:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

In U. S. v. Oklahoma, 261 U. S. 253, 43 S. Ct. 295, 67 L. Ed. 638, the state bank commissioner had taken over assets of a bank under a state law permitting such action if he should become satisfied of its insolvency in the sense of its inability to pay its depositors in ordinary course of business, and to continue as a going banking concern. The Supreme Court, in denying the claim of the government for priority in the payment of the assets in the hands of the bank commissioner, said:

"Section 3466, relied on by the government, is a re-enactment and extension of section 65, Act of March 2, 1799, 1 Stat. 676; and the same or equivalent language, so far as the question here involved is concerned, is found in earlier statutes. Act of March 3, 1797, c. 20, § 5, 1 Stat. 515; also, Act of May 2, 1792, c. 27, § 18, 1 Stat. 263; Act of August 4, 1790, c. 35, § 45, 1 Stat. 169; Act of July 31, 1789, c. 5, § 21, 1 Stat. 42. It has been considered in a number of cases in this court. The claim of the United States to the asserted priority rests exclusively upon the statute. No lien is created by it. It does not overreach or supersede any bona fide transfer of property in the ordinary course of business. It establishes priority, which is limited to the particular state of things specified. The meaning of the word 'insolvent,' used in the act, and of the insolvency therein referred to, is limited by the language to cases where 'a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment,' etc. Mere inability of the debtor to pay all his debts in ordinary course of business is not insolvency, within the meaning of the act, but it must be manifested in one of the modes pointed out in the latter part of the statute, which defines or explains the meaning of insolvency referred to in the earlier part. United States v. State Bank of North Carolina, 6 Pet. 29, 35; United States v. Fisher, 2 Cranch, 358, 390; United States v. Hooe, 3 Cranch, 73, 90; Prince v. Bartlett, 8 Cranch, 431, 433; Conard v. Atlantic Insurance Co., 1 Pet. 386, 439; Brent v. Bank of Washington, 10 Pet. 596, 611;. Field v. United States, 9 Pet. 182, 201. Where the debtor is divested of his property in one of the modes specified in the act, the person who becomes invested with the title is made trustee for the United States, and bound first to pay its debt out of the debtor's property. Beaston v. Farmers' Bank of Delaware, 12 Pet. 102, 133–135. * * *

"The facts set forth in the complaint do not constitute an act of bankruptcy as defined by the federal Bankruptcy Act (section 3a). There is not alleged any conveyance to defraud, or preference through transfer or through legal proceedings, or general assignment for the benefit of creditors. Nor is the case within the meaning of the last clause of section 3a (4), 'or because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state. * * *' The allegations do not show insolvency, within the meaning of section 3466 or of the Bankruptcy Act. * * *

"As insolvency, within the meaning of section 3466, was not necessary for the taking of possession by the bank commissioner, and is not shown to exist, and as no act of bankruptcy as defined by applicable federal legislation on the subject of bankruptcies, or as defined by any law of Oklahoma, is shown to have been committed, and as the debtor bank was not divested of its assets in one of the modes specified in section 3466, the case is not within that section."

We proceed to a consideration of the questions raised or suggested by this record:

First. Does the phrase, "because of insolvency," as used in the amendment of February 5, 1903, to section 3a (4) of the Bankruptcy Act (Comp. St. § 9587), require that the appointment of a receiver in an ordinary creditor's suit be made solely,

or at least in part, on the ground of a then existing insolvency, as defined in the Bankruptcy Act (Comp. St. §§ 9585–9656), or does it suffice for the act of bankruptcy that such insolvency as so defined then exist irrespective of whether or not the appointment of the receiver was based thereon?

Prior to the amendment by which the lasts clause of subdivision 4 of section 3a was added thereto, this court held in Vaccaro v. Security Bank of Memphis, 103 F. 436, 43 C. C. A. 279 (see, too, 1 Collier, Bankruptcy [13th Ed.] p. 164, and cases cited), that the appointment of a receiver for an insolvent corporation was not equivalent to the making of "a general assignment for the benefit of creditors," the only act of bankruptcy then specified in subdivision 4. The authorities are in conflict in their construction of the amendment. The earlier cases deem it essential that the appointment be based in whole or in part upon such insolvency. In re William S. Butler & Co., 207 F. 705, 125 C. C. A. 223 (C. C. A. 1); In re Valentine Bohl Co., 224 F. 685, 140 C. C. A. 225 (C. C. A. 2). The later cases, however, consider the act of bankruptcy established by proof that the debtor was in fact insolvent, as defined in the Bankruptcy Act, at the time of the appointment of a receiver, even though the order of appointment was made pursuant to allegations and findings of insolvency, not as so defined, but in the sense that the debtor was unable to pay his obligations in due course. Davis v. Pullen, 277 F. 650 (C. C. A. 1); Davis v. Miller-Link Lumber Co., 296 F. 649 (C. C. A. 5); Hilb v. American Smelting & Refining Co. (D. C.) 275 F. 384; Re Sedalia Farmers' Co-operative Packing & Produce Co. (D. C.) 268 F. 898. These cases stress the argument that to hold otherwise would practically annul the amendment; for, inasmuch as it is ordinarily and usually unnecessary and uncommon, in a creditor's bill, to allege more than the debtor's inability to pay his obligations as they mature, and the need of a receiver to conserve the assets, such appointments are rarely, if ever, based upon a finding of insolvency, as defined in the Bankruptcy Act. United States v. Oklahoma, supra, is not decisive of this conflict, for in that case insolvency, within the Bankruptcy Act, was "not shown to exist."

We find it unnecessary in the instant case to decide this question, because, assuming the interpretation of this clause of section 3a (4), as held in the later cases, to be correct, we come to the consideration of a second question, namely:

[1] Second. By the phrase, "cases in which an act of bankruptcy is committed," in R. S. § 3466, is the assertion of the government's claim to priority over other creditors limited, in addition to proceedings in which by action of the state, through insolvency or analogous laws, a debtor is divested of his property, for its distribution to his creditors, to those under a federal Bankruptcy Act, when such exists, or does it extend as well to equity proceedings wherein a receiver has been appointed in circumstances sufficient to make such appointment an act of bankruptcy, even though no creditor has availed himself thereof within the time limit—four months, by section 3b of the Bankruptcy Act now in force—to throw the debtor into actual bankruptcy under a petition wherein the appointment of such receiver is alleged as the, or one of the, acts of bankruptcy committed?

Again there is conflict in the authorities. In Davis v. Pullen, supra, and Davis v. Miller-Link Lumber Co., supra, in each case reversing the District Court, priority was allowed, while in Equitable Trust Co. v. Conn. Brass & Mfg. Co., 290 F. 712 (C. C. A. 2), affirming the District Court, it was denied, in proceedings in equity under a creditor's bill. Davis v. Pullen, though not cited in the opinion, was discussed in the briefs filed in the Equitable Trust Co. Case.

For the reasons stated by Judge Rogers, at page 718 to 723, and especially by Chief Justice Shaw in Commonwealth v. Phoenix Bank, 11 Metc. (Mass.) 129, 151, quoted at page 722, we concur in the opinion expressed by the Second C. C. A., followed in Kennebec Box Co., Inc., v. O. S. Richards Corp. (D. C.) 299 F. 871, now pending on appeal in the Second C. C. A.

While not decisive thereof, United States Fidelity & Guaranty Co. v. Strain, 264 U. S. 570, 44 S. Ct. 334, 68 L. Ed. 854, affirming, without opinion and on the authority of United States v. Oklahoma, supra, Strain v. U. S. Fidelity & Guaranty Co., 292 F. 694 (C. C. A. 8), lends support to this conclusion. That case involved, not a creditor's bill in equity, but a proceeding by the state bank commissioner, pursuant to state statute, under which he placed a state bank examiner in charge of an insolvent bank, and since then administered its affairs. It is pointed out in the opinion that the decision in U. S. v. Oklahoma was based upon two distinct grounds; that while, unlike that

case, the bank involved in the Strain Case was insolvent in the bankruptcy sense when taken in charge, yet, like that case, none of the particular acts required by section 3466 as evidencing such insolvency had occurred. Priority under section 3466 was denied, primarily for the reasons stated in the last sentence herein above quoted from U. S. v. Oklahoma. See, too, Anderson v. Myers (C. C. A.) 296 F. 101, 103, certiorari granted 264 U. S. 578, 44 S. Ct. 335, 68 L. Ed. 858.

When the substance of this section was first enacted in 1789, there was no federal Bankruptcy Act, and the provision was doubtless intended to give the government priority in the distribution of a living debtor's assets in proceedings under the state insolvency laws. The provision would of course automatically extend to a bankruptcy case under a federal statute, unless modified by such act or by some later enactment. Mr. Chief Justice Taft has expressed the view concurred in by two of his brethren that under the present bankruptcy statute the government's right of priority extends only to claims for taxes. Sloan Shipyards v. U. S. Fleet Corporation, 258 U. S. 549, 574, 42 S. Ct. 386, 66 L. Ed. 762. See, however, In re Atl. G. & P. S. Co. (D. C.) 289 F. 145. The majority of the court in the Sloan Shipyards Case rested the decision on other grounds, without agreeing or disagreeing with the view expressed by the Chief Justice.

That the government, even without statutory provision, has a similar priority for taxes in equity proceedings, has been held by Judge Knox in the Southern District of New York, Liberty Mutual Ins. Co. v. Johnson Shipyards Corp., 300 F. 952, in that respect distinguishing the Equitable Trust Company Case, supra.

The serious doubt raised by the Sloan Shipyards Case, supra, as to the government's priority in bankruptcy proceedings for any claim, except for taxes, but reinforces the arguments adduced against the allowance of the broader priority in equity proceedings available, but not availed of by a creditor to throw the defendant into bankruptcy.

A final question remains:

[2] Third. Does section 10 of the Federal Control Act (40 Stat. March 21, 1918, c. 25 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾j])[1] prevent the Director

General from asserting government priority over other creditors on claims arising out of the governmental war operations of the railroads?

It seems to us clear that this section was intended to subject the Director General in the operation of the various railway systems to the same rules of substantive civil law that had theretofore applied to the carriers. To give the Director General with his manifold claims arising in the ordinary course of business, priority over all other creditors may work grave injustice. In some cases it might result in the Director General's taking all or nearly all the assets of the debtor. Such priority would give to the Director General a special and privileged position quite inconsistent with the underlying principles of the Federal Control Act (Director General v. Kastenbaum, 263 U. S. 25, 44 S. Ct. 52; Davis v. McCree, 299 F. 142, 146 [C. C. A. 6]; and the marked tendencies of our public law. Cf. The Pesaro (D. C.) 277 F. 473; The Gloria (D. C.) 286 F. 188. Judicial opinion as well as legislation is examining anew the proper privileges and immunities to be accorded the sovereign state, and in cases not clearly covered by statute or decision the correct solution is not to be found by the application of an abstract formula, but by the most careful consideration of the public needs and the practical requirements of law in the modern industrial community.

Giving due regard to the expression of congressional policy of priority, on the one hand, and of a restriction to the rights that the carrier theretofore enjoyed, on the other hand, and on a careful balancing of conflicting interests, we believe that, especially in the light of the policy of the present Bankruptcy Act as interpreted by the Chief

laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government. Nor shall any such carrier be entitled to have transferred to a federal court any action heretofore or hereafter instituted by or against it, which action was not so transferable prior to the federal control of such carrier; and any action which has heretofore been so transferred because of such federal control or of any act of Congress or official order or proclamation relating thereto shall upon motion of either party be retransferred to the court in which it was originally instituted. But no process, mesne or final, shall be levied against any property under such federal control."

[1] "Carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal

Justice, supra, priority must be denied to the Director General in this case. The question of priority is a matter of civil, compensatory law like the question of tort liability, considered in the Kastenbaum Case, supra, and is quite different from the question of the nonliability of the Director General, dealt with in Missouri Pacific R. R. Co. v. Ault, 256 U. S. 554, 41 S. Ct. 593, 65 L. Ed. 1087. It is also to be distinguished from the question whether the Director General is subject to the special state and federal statutes of limitations. Dupont de Nemours & Co. v. Davis, 264 U. S. 456, 44 S. Ct. 364, 68 L. Ed. 788; Davis v. Corona Coal Co., 265 U. S. 219, 44 S. Ct. 552, 68 L. Ed. 987. The fact that the Director General has been declared not to have been subjected to the limitation statutes renders it all the more important that the declared legislative policy subjecting him to the usual rules of substantive civil law be given full effect. While our conclusion differs from that expressed in In re Hibner Oil Co., 264 F. 667, 14 A. L. R. 629 (C. C. A. 7), and In re Tidewater Coal Exchange, 280 F. 648 (C. C. A. 2), as well as in Davis v. Pullen and Davis v. Miller-Link Lumber Co., supra, in none of these cases does the court's attention appear to have been drawn to section 10 of the Federal Control Act.

Affirmed.