In re BUCYRUS ROAD MACHINERY CO.

BUCYRUS ROAD MACHINERY CO. v. EDSINGER et al.

(Circuit Court of Appeals, Sixth Circuit. January 5, 1926.)

No. 4466.

1. **Bankruptcy ☞60—Company held to have "applied" for appointment of receiver, within meaning of Bankruptcy Act.**

Company, which procured filing of petition for appointment of receiver in equity, and which filed an answer in such proceeding, joining in prayer of petition, *held* to have "applied" for a receiver, within meaning of Bankruptcy Act, § 3a, cl. 4 (Comp. St. § 9587).

2. **Bankruptcy ☞60—"Insolvency," in bankruptcy sense, is contemplated by provision of Bankruptcy Act defining acts of bankrupt.**

The "insolvency" contemplated by Bankruptcy Act, § 3a, cl. 4 (Comp. St. § 9587), de-

claring it an act of bankruptcy if "because of insolvency a receiver or trustee has been put in charge of his property," is insolvency in bankruptcy sense at time of appointment of receiver, though appointment was based solely on allegations of insolvency in equity sense.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Insolvency—Insolvent.]

3. **Bankruptcy ☞60—Company held "going concern," entitled to have its assets so valued in determining question of solvency at time of appointment of receiver.**

Road machinery company, employing between 200 and 300 men at time of appointment of receiver, which was shut down for 10 days for inventory, and then reopened with an average of 60 men, doing primarily a foundry jobbing business, *held* "a going concern," entitled to have its assets valued as those of a going concern, in determining whether it was insolvent, within Bankruptcy Act, § 3a, cl. 4 (Comp. St. § 9587), at time of appointment of receiver in state court.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Going Business or Concern.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; Paul Jones, Judge.

Bankruptcy proceeding by Rose Edsinger and other against the Bucyrus Road Machinery Company. From a decree confirming a special master's report and adjudicating bankruptcy, the alleged bankrupt appeals. Reversed and remanded.

Wm. A. McAfee, of Cleveland, Ohio, and C. F. Schaber, of Bucyrus, Ohio (Holliday, Grossman & McAfee, of Cleveland, Ohio, on the brief), for appellant.

Charles Gallinger and Edward J. Myers, both of Bucyrus, Ohio (B. J. Cattey, of Crestline, Ohio, and Gallinger & McCarron, of Bucyrus, Ohio, on the brief), for appellees.

Before DONAHUE, MACK, and MOORMAN, Circuit Judges.

MACK, Circuit Judge. Petition in bankruptcy, based upon the charge that within four months next preceding the alleged bankrupt, "because of insolvency, permitted a receiver to be put in charge of its property by" the state court.

An intervening petition sets out the proceedings of the state court more fully, by giving the substance of the allegations in the petition for the receiver, followed by the statement that the defendant therein, the alleged bankrupt, through its president, filed an answer and admitted the truth of the allegations in the petition, and that immediate-

ly on the filing of the petition and answer the court entered an order appointing a receiver, reciting in the order that the defendant therein had filed an answer "admitting all the allegations of plaintiff's petition herein, and joining in the prayer thereof, and consenting to the appointment of a receiver herein."

The petition in bankruptcy and the answer, denying the act of bankruptcy as well as insolvency, were referred to a special master, who reported against the bankrupt on each of these points. From the decree confirming this report, and adjudicating bankruptcy, this appeal was taken.

[1, 2] 1. It is unnecessary to decide in this case whether a joining by answer in petitioner's prayer for a receiver in equity is an application for a receiver, within section 3a of the Bankruptcy Act (Comp. St. § 9587). The court was clearly right, in view of the testimony of the alleged bankrupt's president that before the proceeding it had been decided "that, to conserve the interests of all concerned, a receiver should be appointed; just what day and date it should be done I don't know," in its conclusions stated as follows: "The machinery company was clearly a moving factor and active participant in the receivership suit. * * * The action taken, and the conduct of the proceeding, was tantamount to an application for a receiver."

In effect the company procured the petition to be filed; in so doing it clearly "applied" for a receiver. The intervening petition in bankruptcy, if not the original one, can, however, be supported as well on the fourth clause of section 3a of the Bankruptcy Act, "because of insolvency a receiver * * * has been put in charge of his property under the laws of a state." In Davis v. Michigan Trust Co. (C. C. A.) 2 F.(2d) 194, we reviewed the earlier and later authorities, but found it unnecessary to decide as between them. We now hold, with the later cases there cited, that this act of bankruptcy is committed if the debtor was in fact insolvent in the bankruptcy sense at the time of the appointment of the receiver, even though that appointment was based solely upon allegations of insolvency in the equity sense.

[3] 2. Was the company a going concern on the day of the filing of the petition in equity? At one place the special master speaks of "a going concern in the sense that that term is understood by manufacturers." The court has interpreted the special master's report as finding that it was not a going concern; that finding was confirmed. In our judgment, it was in a fair sense a going concern. The testimony is uncontradicted that between 200 and 300 men were employed at the time of the receivership, though the dull season had been on some months; that the receiver shut down for 10 days to take inventory, and then went on with an average of 60 men, doing primarily a foundry jobbing, and not a manufacturing, business.

But, though this was in effect a voluntary receivership, necessitated by shortage in cash, and to that extent unlike an involuntary proceeding, begun against a concern running full blast and unaware of the contemplated action, the record does not disclose that the parties in charge had determined to liquidate or had stopped work; on the contrary, rightly or wrongly, they were hopeful of tiding over and carrying on.

3. It follows, therefore, that the question of insolvency at the time of the appointment of the receiver must be determined by the valuation of the property at that time as that of a going concern. As the special master and the trial judge adopted a different basis, and as it is certainly not clear on this record that they would have found insolvency on the basis of a going concern valuation, the decree of adjudication must be reversed. The ends of justice will, in our judgment, best be met by affording to the special master, who saw and heard the witnesses, the opportunity to determine in the first instance the valuation at that time on the record as made, or with such additional testimony as the parties may adduce on that matter.

Reversed and remanded.