## UNITED STATES v. MIDDLE STATES OIL CORPORATION et al.

(Circuit Court of Appeals, Eighth Circuit. March 14, 1927.)

### No. 7511.

1. **Receivers ⟷153—United States held not entitled to priority on claim for taxes against solvent corporation in hands of receiver (Bankruptcy Act, § 1, subd. 15 [Comp. St. § 9585]; Comp. St. § 6372).**

Where corporation in hands of receiver was not insolvent within meaning of Bankruptcy Act, § 1, subd. 15 (Comp. St. § 9585), at time of appointment of receiver, or any time subsequent thereto, the United States was not entitled, under Rev. St. § 3466 (Comp. St. § 6372), to priority in its claim for taxes.

2. **Receivers ⟷153—Subsidiary corporation's consenting to appointment of ancillary receiver to carry on business held not "assignment for benefit of creditors," authorizing priority to claim of United States (Bankruptcy Act, § 3a, subd. 4 [Comp. St. § 9587]; Comp. St. § 6372).**

Where subsidiary corporation which was placed in receivership on application of others, and in its answer to supplemental bill admitted allegations, and consented to appointment of receivers, in order that it might carry on business which had become intermingled with that of parent corporation in hands of receiver, its action in doing so held not to amount to general assignment for benefit of creditors within meaning of Bankruptcy Act, § 3a, subd. 4 (Comp. St. § 9587), authorizing priority under Rev. St. § 3466 (Comp. St. § 6372) to claim of the United States.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Assignment for Benefit of Creditors.]

3. **Assignments for benefit of creditors ⟷31 —Benefit of creditors is essential element of "general assignment."**

Benefit of creditors is essential element of a general assignment, and an assignment for benefit of creditors must be one such as is known to common law as a "general assignment."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, General Assignment.]

4. **Internal revenue ⟷26—United States' priority for tax debt depends on priority statute.**

Claim of United States for priority of payment of tax debt depends on priority statute, and does not rest on any sovereign prerogative.

5. **Receivers ⟷149—Court, on appointing ancillary receiver, properly issued show cause order, requiring United States to file claim for taxes within certain time.**

Where, in proceedings for appointment of ancillary receiver for corporation, time for presenting claims was determined, a show cause order was properly issued requiring government to file its claim for taxes, since it did not have right to file such claim at any time on theory that United States is not bound by limitations, and that laches will not ordinarily apply.

Appeal from the District Court of the United States for the Eastern District of Oklahoma.

In the matter of the receivership of the Middle States Oil Corporation, the Cotton Belt Petroleum Company, and others. From a judgment denying priority to a claim of the United States against the Cotton Belt Petroleum Company, the United States appeals. Affirmed.

Philos S. Jones, Asst. U. S. Atty., of Wilburton, Okl. (Frank Lee, U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

Edward P. Marshall, of Tulsa, Okl. (C. E. Cooper and Bird McGuire, both of Tulsa, Okl., on the brief), for appellees.

Before LEWIS and KENYON, Circuit Judges, and TRIEBER, District Judge.

KENYON, Circuit Judge. The appellee in interest is the Cotton Belt Petroleum Company, a corporation (hereinafter referred to as the petroleum company), which has been in the hands of receivers since September 9, 1924. The original case, involving a large number of oil companies, of which the Middle States Oil Corporation was the parent one, was brought in the United States District Court for the Southern District of New York. The proceedings out of which this appeal arose took place in the United States District Court of the Eastern District of Oklahoma, and were ancillary to the New York suit. It will be unnecessary to burden this opinion with any extended statement of facts as to the New York case. It is sufficient to say that the affairs of the Middle States Oil Corporation and the affairs of the various subsidiary companies thereof reached such condition that the assets of the various companies became intermingled and confused to such an extent that it became advisable, in order to protect the interests of the several corporations, the creditors, and stockholders, that the courts should take charge of the respective companies by receivership proceedings. The original ancillary proceedings in Oklahoma did not include the petroleum company, but, on September 9, 1924, a supplemental bill of complaint was filed covering said company, to which complaint it filed answer, confessing the allegations of the supplemental complaint, and joining in a prayer for ancillary receivers, and such were duly appointed. Appellee petroleum company and its receivers are the parties complained of in this appeal. Immediately after, or at the time of, the appointment of ancillary receivers, the court required notice to be given the creditors of the petroleum company to file their claims within 40 days. Notice by publication in one of the Oklahoma papers of general circulation was provided for, and such notice was duly given for four consecutive weeks. It was provided by court order that all creditors failing to file claims with the ancillary receivers within 40 days from the date of the first publication of the notice required thereby should be barred, and should not be allowed or permitted to participate in any payments from the estate of the defendant companies or from the proceeds of the sale thereof. On November 8, 1924, upon petition of the ancillary receivers, the court enlarged the time theretofore given to creditors to file their claims to an additional term of four months from the expiration of the time originally provided. January 7, 1925, upon further petition of the ancillary receivers, the court further enlarged the time for the filing of tax claims against the petroleum company, and other defendant companies for a period of 30 days from January 8, 1925, and also ordered the ancillary receivers to transmit a certified copy of the order by registered mail to each tax claimant. The order provided that tax claimants, failing to file claims with the ancillary receivers within the time therein provided, should be barred in their demands. Under date of January 12, 1925, duly certified copies of this order were transmitted by registered mail to the collector of internal revenue at Oklahoma City, Okl., and to the United States district attorney at Muskogee, Okl. The collector of internal revenue did not file with the ancillary receivers any claim of indebtedness on account of supposed taxes due the United States until March 4, 1926, more than 13 months after the time allowed by the order of the trial court for filing such claims. The claims of all creditors entitled to payment were submitted to, and determined by, a special master in chancery on February 15, 1926. The surviving ancillary receiver asked for an order for the distribution of funds in his hands in payment of said creditors' claims, and alleged that, while the collector of internal revenue had filed certain claims for unpaid taxes claimed to be due the United States from several defendant corporations, there had been no such claim filed as against the petroleum company. The court thereupon issued an order and rule upon the said collector of internal revenue to show cause why a distribution of the funds of the petroleum company then on hand should not be made in payment of the claims of creditors which had been established pursuant to the orders of the court.

This hearing was set for March 5, 1926, and notice duly given to the collector of internal revenue, with copy of the order. On March 4, 1926, said collector filed with the ancillary receiver a claim for additional income taxes alleged to be owing the government by the petroleum company for the years 1920, 1921, and 1924, aggregating $102,636.82, and claimed priority in the payment of these alleged taxes under "section 3466 of the Revised Statutes and section 64 (a) of the Bankruptcy Act." The response of the collector of internal revenue to the show cause order, among other things, recites as follows: "That your petitioner, United States of America, has not had sufficient time to investigate said claim recently filed, as aforesaid, and is not informed as to the merits of said claim, but states and avers that the United States of America believes, and therefore alleges, that said claim is correct, and should be paid, * * * and therefore protests against any distribution whatever until the claims of the United States of America for taxes are fully satisfied."

The claims filed, allowed, and approved, with interest thereon, amounted to approximately $147,000. The court decided against the claim of priority of the government, and made a number of findings, the principal ones being that the assets of the petroleum company largely exceeded in value the actual or probable liabilities of such company, and were of the reasonable value of more than $600,000; that all claims against the petroleum company, including that of the government for taxes, would not exceed $250,000; that the approximate sum in the hands of the surviving ancillary receiver was about $116,000; and that the probable net income from the estate of said company would be for some time in the future at least $12,000 per month; that the claims of the creditors allowed constituted judgments, and became entitled to priority payment over the tax claims of the United States. The decree provided that the claim filed by the collector of internal revenue under date of March 4, 1926, should be accepted by the receiver, and filed out of time as of March 4, 1926.

The issues presented are clear cut:

First. Was the tax claim of the government entitled to priority of payment over established claims by virtue of section 3466 of the Revised Statutes (Comp. St. § 6372), which is as follows: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from

the deceased, the debts due to the United States, shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law; as to cases in which an act of bankruptcy is committed."

Second. Was the government compelled under the orders of the United States District Court to file its claim for taxes within the time provided by such orders, and, if it did not do so, was it barred from claiming priority?

We discuss these questions in their order:

I. The court found "* * * that Cotton Belt Petroleum Company is a solvent corporation, and that the assets of the defendant Cotton Belt Petroleum Company largely exceed in value the actual or probable liabilities of Cotton Belt Petroleum Company to general lien and preferred creditors, and to the United States; * * * that the government of the United States and said collector of internal revenue did not file any claim herein until March 4, 1926, and long after notice to all creditors of said defendant corporation had been given by receivers to file their claims herein, in accordance with the previous orders of this court; and to this time there has not been filed in the office of the clerk of the United States District Court for the Eastern District of Oklahoma any notice or statement of claim by said collector or by the United States of taxes due to the United States from said Cotton Belt Petroleum Company."

If section 3466 applies to the situation arising upon these facts, and if the government is not barred by failure to file the claims within the time ordered by the court, then the claim for taxes, if found to be legally due, is entitled to priority payment.

Section 3466 provides for a priority of payment of debts due the United States (a) when the person indebted is insolvent; (b) whenever the estate of any deceased debtor in the hands of the executors or administrators is insufficient to pay all the debts due from the deceased; (c) cases in which a debtor not having sufficient property to pay all his debts makes a voluntary assignment thereof; (d) cases in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law; (e) cases in which an act of bankruptcy is committed. Of course, the term "person," as here used, covers corporations.

It is apparent that subdivisions (b), (c),

and (d) are not applicable in any way to the situation here presented. The claim of the government, therefore, must rest upon subdivision (a) or (e).

The Bankruptcy Act, c. 1, § 1, subd. 15 (Comp. St. § 9585), defines an insolvent person as follows: "A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts."

In United States v. State of Oklahoma, 261 U. S. 253, 259–260, 43 S. Ct. 295, 297, 67 L. Ed. 638, the court defines the meaning of the word "insolvent" as used in section 3466, and says: "The meaning of the word 'insolvent' used in the act and of the insolvency therein referred to is limited by the language to cases where 'a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment,' etc. Mere inability of the debtor to pay all his debts in ordinary course of business is not insolvency within the meaning of the act, but it must be manifested in one of the modes pointed out in the latter part of the statute which defines or explains the meaning of insolvency referred to in the earlier part." The court further said page 260–261 [43 S. Ct. 298]): "Does section 3466 apply? It requires that there shall be an insolvent debtor 'not having sufficient property to pay all his debts.' The complaint does not allege that the bank's assets were not sufficient to pay all its debts. After stating that the bank examiner found that it was insolvent and unable to pay all its debts and unable to continue as a going banking concern, and that the bank commissioner pursuant to the authority vested in him by the laws of the state adjudged the bank insolvent and thereupon took charge and possession of its assets for the purposes of liquidation, the complaint does allege that the bank was and is insolvent. But the word 'insolvent' is used in different senses. Section 3466 makes it apply only in cases where the debtor 'not having sufficient property to pay all his debts.' "

A case very similar to the one at bar is Nolte et al. v. Hudson Nav. Co. (C. C. A.) 8 F.(2d) 859, 865, 866. In that case the government claimed priority on account of certain transportation taxes. The trial court held the claims were entitled to allowance only as general claims. The court at considerable length discussed section 3466, and said: "A

person to be insolvent within the meaning of the section quoted must be not simply unable to pay his debts, but that inability must be manifested in one of the three ways pointed out in the explanatory clause of the section. It must appear (1) that the insolvent debtor has made a voluntary assignment; or (2) that the effects of an absconding, concealed, or absent debtor have been attached; or (3) that an act of bankruptcy has been committed." The entire question was whether the navigation company had committed an act of bankruptcy under the amendment of 1903 to subdivision 4 of section 3 a of the Bankruptcy Act (Comp. St. § 9587) relative to the insolvent party applying for a receiver, or because of insolvency a receiver having been put in charge of the property. It points out that the company's assets were some $3,000,000 more than its liabilities; that it could not presently convert its assets, and therefore the navigation company admitted the allegations of the bill, and joined in the prayer for receiver. The court pointed out that, if the corporation was actually insolvent within the meaning of the Bankruptcy Act by joining in the application for a receiver, it might be held to have committed "an act of bankruptcy" within the meaning of the act. In view of the fact that the assets exceeded by some $3,000,000 the liabilities, and that the company was embarrassed in meeting its obligations as they matured, and consented to the appointment of receivers because of the unusual conditions of the money market, the court said: "We do not think that in doing so the company committed an 'act of bankruptcy,' within the meaning of the statute. By just such proceedings bankruptcy is often avoided and financial embarrassments are overcome."

[1] The mere fact that a party may not be able to pay debts in the ordinary course of business as they fall due does not make him an insolvent under section 3466 or the federal Bankruptcy Act. The insolvency which section 3466 refers to is the insolvency defined by the Bankruptcy Act. It is clear from this record and the findings of fact of the court that the petroleum company was not insolvent at the time of the appointment of receivers or at any time subsequent thereto; that its assets were more than twice its liabilities. In no pleading filed has the petroleum company been charged to be insolvent at any time. Therefore the first clause of section 3466 does not apply. Does the last clause referring to "cases in which an act of bankruptcy is committed" apply?

Appellee contends that section 3466 cannot apply to a case where a solvent living

debtor, though having committed an act of bankruptcy, is not in fact adjudicated a bankrupt, but thereafter continues to transact his business without bankruptcy proceedings having been brought against him. We do not feel it necessary to pass on this question, in view of the conclusion we reach.

Chapter 3, § 3, of the Bankruptcy Act of 1898, as amended by the Act of 1903, defines what shall be considered acts of bankruptcy, and the fourth subsection of subdivision (a) thereof is as follows: "Made a general assignment for the benefit of his creditors, or, being insolvent, applied for a receiver or trustee for his property or because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state, of a territory, or of the United States." Comp. St. § 9587.

Among the amendments of 1926 to the Bankruptcy Act (44 Stat. 662) is one which bears on this subdivision and creates another act as one of bankruptcy, which, however, does not bear on the matter here involved. None of the other specified acts of bankruptcy could by any possibility apply to the facts of this case.

As we have heretofore pointed out, the petroleum company was not insolvent, as that term is used in the Bankruptcy Act. Therefore it does not come under the provision of subdivision 4, § 3a, covering a situation where an insolvent person applies for a receivership of his property, or because of insolvency a receiver has been put in charge of his property.

It cannot be claimed that subsection 5 of division (a) of section 3 applies, as the petroleum company did not admit in writing its inability to pay its debts and willingness to be adjudged a bankrupt on that ground. Therefore the only act of bankruptcy that can be urged is that the petroleum company made a general assignment for the benefit of its creditors. Has it done so?

It is important to note the provisions of the supplemental ancillary bill of complaint which was filed by Joseph A. Phelan on behalf of himself and other creditors. In connection with the original bill and exhibits it alleges, in substance, that the petroleum company, in common with other subsidiaries of the Middle States Oil Corporation, was left without business management on account of the appointment of receivers for the Middle States Oil Corporation; that creditors were threatening attachments and other legal process; that it could not obtain financial assistance from Middle States Oil Corporation;

that it was necessary that its property be operated; and that, in the interest of proper management and due conservation of the properties and business of the Cotton Belt Petroleum Company, receivers should be appointed.

Division 4 of the supplemental bill is as follows: "The relief herein prayed for is for the reasons set forth in said bill of complaint and in Exhibit B annexed thereto, necessary to the protection and preservation of the properties of the said defendant company Cotton Belt Petroleum Company, and the protection of the rights of its respective creditors and stockholders, and that by reason of the facts set forth in said Exhibit B your orator has not adequate remedy at law in the premises."

[2] The receivership was applied for by others, but the petroleum company, in its answer to the supplemental bill, admitted the allegations, and consented to the appointment of ancillary receivers. This is the act which the government claims amounts to a general assignment for the benefit of creditors within the meaning of section 3 a, subd. 4, of the Bankruptcy Act.

We refer to a number of cases bearing on this question, some of which were decided before the amendment of 1903, with reference to an insolvent applying for a receiver or a receiver being put in charge of the property because of insolvency.

This court, in Moore v. Yampa Mercantile Co. et al. (C. C. A.) 287 F. 629, 636, discusses what constitutes a general assignment, and states: "That the general assignment declared by the Bankruptcy Act to constitute an act of bankruptcy embraces any conveyance at common law or pursuant to statute by which the assignor intends to make and does make an absolute appropriation of his property not exempt from levy to pay all his debts, although there may be some defect in the conveyance or some failure to comply with some law or statute in the proceeding he takes to effectuate his intention which does not prevent the actual appropriation of his property for the benefit of his creditors."

Previously, in Re Thomlinson Co. et al. (C. C. A.) 154 F. 834, 835, this court said: "The 'general assignment' there contemplated is to be taken in its generic sense, and embraces any conveyance at common law or by statute by which the parties intend to make an absolute and unconditional appropriation of the property conveyed to raise funds to pay the debts of the vendor, share and share alike." See, also, Courtenay Mercantile Co. v. Finch,

Van Slyck & McConville et al. (C. C. A.) 194 F. 368.

[3] Benefit of creditors is the essential element of a general assignment. Such assignment must be one such as is known to the common law as a general assignment. Vaccaro et al. v. Security Bank of Memphis et al. (C. C. A.) 103 F. 436.

In re Ambrose Matthews & Co. (D. C.) 229 F. 309, a District Court case, affirmed by the Circuit Court of Appeals in 236 F. 539, it was held that to constitute an assignment for the benefit of creditors within the Bankruptcy Act there must be an absolute transfer by the debtor of both the legal and equitable titles of his property.

In Vaccaro et al. v. Security Bank of Memphis et al. (C. C. A.) 103 F. 436, 439, in an opinion by Judge Lurton, later a Justice of the Supreme Court, concurred in by then Circuit Judge Day, also later a justice of the Supreme Court, and Circuit Judge Severance, it is said: "But if the facts be regarded as substantially proving that the Vaccaros consented to the proceeding by agreeing to make no opposition, so that the proceeding could not be regarded as purely one in invitum, we are still of opinion that the appointment of a receiver under such a suit, and for the bona fide purpose of liquidating the affairs of a partnership dissolved by death, was not the making of a general assignment within the meaning of the Bankrupt Act. A general assignment is the voluntary act of a debtor, whereby he transfers his property to a trustee for the benefit of creditors. Its nature and characteristics were well understood. It is not enough to say that, if the same consequences ensue from the appointment of a receiver, the one act is the equivalent of the other in law. Under section 3 of the Bankrupt Act very serious consequences attach to the making of a 'general assignment.' The debtor may be ever so solvent, and the act highly advantageous to his creditors, still it is technically an act of bankruptcy, and some creditors are quite likely to imagine that some advantage will accrue by an adjudication in bankruptcy. We are not disposed to construe the provisions of subdivision 4 of section 3 as including anything as a general assignment unless it is clearly one of those assignments known to the common law as a general assignment." The court in that case pointed out that, even if the consequences which attach to the appointment of receivers for the purpose of winding up a partnership are similar to those which result to creditors from a general assignment, it was not sufficient under the facts of that case to constitute a general assignment under section 3 of the Bankruptcy Act.

In re Gilbert et al. (D. C.) 112 F. 951, was a suit where one of the partners entered into a stipulation for the appointment of a receiver for the firm and the subsequent transfer of its assets to the receiver. It was held this did not constitute a general assignment within the Bankruptcy Act, and was not an act of bankruptcy.

In re Henry Zeltner Brewing Co. (D. C.) 117 F. 799, it was held that a corporation which in fact had sufficient property to pay its debts did not become insolvent within the meaning of the Bankruptcy Act of 1898 (Comp. St. §§ 9585–9656), and did not commit an act of bankruptcy by submitting to the appointment of a receiver by a state court. In re Baker-Ricketson Co. (D. C.) 97 F. 489; In re Empire Metallic Bedstead Co. (C. C. A.) 98 F. 981; Beaston v. Farmers' Bank, 12 Pet. 102, 9 L. Ed. 1017.

A number of cases with reference to questions arising under section 3466 in its relation to the Bankruptcy Act have been rather recently decided by the Supreme Court of the United States.

Bramwell v. U. S. Fidelity Co., 269 U. S. 483, 492, 46 S. Ct. 176, 178, 70 L. Ed. 368, is a case relied on by appellant. A bank in Oregon was placed, through a resolution of its directors, in the exclusive possession and control of the state superintendent of banks, to be administered and disposed of for the benefit of creditors pursuant to Oregon laws, under which the superintendent performs the functions of receiver or trustee for the liquidation of the debts of the insolvent. It was held that within the meaning of the priority act there was a voluntary assignment; and also an act of bankruptcy within the definition of the Bankruptcy Law, and therefore section 3466 applied. The decision is based upon the fact that, by the resolution of the directors of the bank the bank was divested of the possession and control of its property and business, and that possession and control passed to appellant for the purpose of liquidating the debts of the bank, and that the bank was insolvent. The following language of the court is significant: "It must be held that, within the meaning of the priority act, the bank made a voluntary assignment of its property; and that, because of the bank's insolvency, a trustee was put in charge of its property under a state law within the meaning of the Bankruptcy Act." The reason for the trusteeship was insolvency of the bank.

In Price v. United States, 269 U. S. 492, 502, 46 S. Ct. 180, 182, 70 L. Ed. 373, it was

held that taxes due the government constitute debts as that term is employed in section 3466 of the Revised Statutes. It was alleged in the complaint under which the receiver was appointed that defendant was without money to pay its debts then due and shortly to become due; that creditors were pressing their claims; and that, if the assets could be sold in the usual course of its business, they would be in excess of its debts. Defendant filed answer admitting the allegations. It was found, however, that the assets were insufficient to pay the claims, and that the general creditors would not recover more than 40 per cent. thereof. The complaint in the Price Case has some similarity to the complaint in this case. It does not allege insolvency of the debtor, and does assert that, "if its assets could be sold in the usual course of business, they would be in excess of its debts," but the court in its opinion stresses the fact that defendant was in fact insolvent. Under these circumstances it was held that defendant made a voluntary assignment of its property within the meaning of section 3466, and that defendant co-operated with the plaintiff to secure the appointment of a receiver to whom it immediately handed over possession and control of its property. The court says: "While in effect the complaint alleged that defendant was solvent, the facts set forth indicate that it was in a failing condition. And it was found to be insolvent within a short time after the appointment of the receiver."

The holding of the Price Case is that an insolvent corporation joining in the prayer of a creditors' bill for receivership makes, in effect, a voluntary assignment of its property, and commits an act of bankruptcy within the meaning of section 3466, Revised Statutes, and that the statement of the complaint that defendant was solvent when in fact it was not cannot be controlling. The Price Case does not hold that a solvent corporation agreeing to a receiver to carry on its business in order to solve intercorporate difficulties should be held by that act to have made a general assignment for the benefit of creditors or to have committed any act of bankruptcy.

The case of United States v. Butterworth-Judson Corporation, 269 U. S. 504, 513, 46 S. Ct. 179, 180, 70 L. Ed. 380, deals with an insolvent corporation. Action was brought by a simple contract creditor against the defendant for the conservation and disposition of its property for the benefit of its creditors. The answer admitted the allegations of the bill, and consented to the decree appointing receivers. The court said: "Taken in connection with its insolvency, now conceded, respondent's answer admitting the allegations of the complaint and its consent to the decree appointing receivers amounted to the handing over of all its property and business to the receivers to be administered, under the direction of the court, as a trust fund to pay respondent's debts. In substance, the things done by respondent amounted to a voluntary assignment of all its property within the meaning of section 3466. The United States is entitled to priority." Again, the question of insolvency distinguishes this case from the one at bar. In these late cases in the Supreme Court the receivership was for the benefit of creditors. The debtors were insolvent. In this case the interest of creditors was merely an incidental matter. The receivership was brought about in order that the corporation itself might continue to carry on. It is apparent that the consent of the petroleum company to the appointment of receivers was not for the primary purpose of having assets handled in trust to be distributed to the creditors, but to carry on the corporate business which had become intermingled with that of the parent corporation and other subsidiary corporations. The object of the receivership was not to benefit creditors.

An interesting case on the subject is In re Bucyrus Road Machinery Co. (C. C. A.) 10 F.(2d) 333. There the appellate court (sixth circuit) held that a debtor joining in the prayer of a petition for a receiver to be appointed would be held to have "applied" for a receiver, and so had committed an act of bankruptcy if he was in fact insolvent in the bankruptcy sense at the time the receiver was appointed. Of course, this would be true under the Bankruptcy Act. In a previous case, Davis, Director General of Railroads, v. Michigan Trust Co. (C. C. A.) 2 F. (2d) 194, the same court discussed the amendment of February 5, 1903, to section 3a, subdivision 4, of the Bankruptcy Act, with relation to application by insolvent debtor in hands of a receiver. In both of these cases the Appellate Court of the Sixth Circuit regarded insolvency as the real key to the situation.

The consenting of a solvent corporation to the application of a creditor for a receiver where the bona fide purpose of the receivership is not to benefit creditors by a distribution of the property, but is for the purpose of enabling the corporation to carry on its business as such, which this record discloses is the situation here, does not constitute an act of bankruptcy. Were the corporation insolvent

an entirely different question would arise. We conclude that the petroleum company did not make an assignment for the benefit of its creditors as that term is used in the Bankruptcy Act.

[4] The claim of the United States for priority of payment of its alleged tax debt depends upon the priority statute. As held in Price v. United States, supra, such claim does not rest upon any sovereign prerogative. In Equitable Trust Co. of New York v. Conn. Brass & Mfg. Corp. (C. C. A.) 290 F. 712, 718, in discussing this matter, the Circuit Court of Appeals of the Second Circuit said: "As the United States has no common law, whatever right of priority in the payment of debts the United States possesses over other creditors exists because of some statute which confers it. It does not exist independently of statute. The priority claimed in this case is based upon section 3466 of the Revised Statutes."

What we have so far said expresses our opinion as to the first question at issue hereinbefore stated, and, if our conclusion is correct, disposes of the case.

[5] II. We refer, however, to the other question as to the failure of the government to file its claim for alleged taxes according to the rules and notices prescribed by the court. Ample time and notice thereof were given to file all claims. A special show cause order was issued on the collector of internal revenue. No attention seems to have been paid to it, and the claim now asserted was presented more than 13 months thereafter. No proceedings at any time seem to have been taken to enforce the alleged claim, and the response to the show cause order recites that the United States had not had sufficient time to investigate the claim, "and is not informed as to the merits of said claim." Counsel for the United States insist in their argument that the court had no power to require the United States to file its claim within any particular time, and refer to the well-known doctrine that the United States is not bound by any statute of limitations, unless Congress has clearly manifested its intention that they should be so bound, nor that the doctrine of laches will ordinarily apply to the United States upon the theory, as stated in a number of cases in the Supreme Court, that public interest should not be prejudiced by the negligence of the officers or agents of the government. United States v. Nashville & C., Ry. Co., 118 U. S. 120, 6 S. Ct. 1006, 30 L. Ed. 81; United States v. Beebe, 127 U. S. 338, 8 S. Ct. 1083, 32 L. Ed. 121; United States v. Insley, 130 U. S. 263, 9 S. Ct. 485, 32 L.

Ed. 968. Of course, this is well-settled law. The government insists that it has the right to file its claim for taxes apparently at any time it chooses, regardless of any orders or rules or procedure of the District Court. We do not so understand our general scheme of government. The situation is not one involving any statute of limitations or any question of laches, but it involves the question of whether the administrative branch of the government may ignore and refuse to accede to rules of the judicial branch made for the purpose of carrying on orderly judicial procedure and administering justice. We see no reason why the court could not make the show cause order.

In Re Anderson, 279 F. 525, the Circuit Court of Appeals of the Second Circuit held that the court had power to determine the amount and validity of a tax claimed by the United States, and that the court could order notice served on the collector of internal revenue for the district requiring the United States to file its claim within a time fixed or otherwise be barred "to the end that settlement of the estate may not be unreasonably delayed." Judge Trieber, in United States v. Lee Wilson & Co. (D. C.) 214 F. 630, 651 (affirmed by this court in 227 F. 827, and by the Supreme Court of the United States in 245 U. S. 24, 38 S. Ct. 21, 62 L. Ed. 128) said: "There can be no doubt that in a suit in equity the claims of the government appeal to the conscience of the chancellor with the same, but with no greater or less, force than those of private individuals under like circumstances, and they are determinable by the same rules and principles." See, also, Ledoux et al. v. La Bee (C. C.) 83 F. 761; In re Tyler, Petitioner, 149 U. S. 164, 13 S. Ct. 785, 37 L. Ed. 689; Scott v. Western Pac. R. Co. (C. C. A.) 246 F. 545; In re General Film Corporation (C. C. A.) 274 F. 903; State of Iowa v. Carr (C. C. A.) 191 F. 257; Hemmer et al. v. United States (C. C. A.) 204 F. 898.

There is also an interesting opinion of the District Court of the United States for the Northern District of Texas (Phelan v. Middle States Oil Corporation, 15 F.[2d] 88), in which the court held that the distribution of the estate could not be delayed by the failure of the United States to present its claim for taxes. If the officers of the Treasury Department are under no obligation to ascertain the amount of taxes which they propose to enforce, and may present the matter whenever they elect so to do, regardless of any rules of the courts of the United States, then such courts are not in a position to do justice to

citizens of the United States. It is just as important that the government deal fairly with its citizens as that its citizens deal fairly with the government.

In this case the Treasury Department seems not to have determined what taxes it actually intends to attempt to collect. According to the response of the collector of internal revenue, it has not had time to investigate the claim, "and is not informed as to the merits of said claim," and yet insists that under these circumstances the court must await the pleasure of the Treasury Department, and that claims allowed and to pay which there are ample funds, and which bear 6 per cent. interest, must go on bearing the interest at the ultimate expense of the petroleum company until the government at its pleasure is ready to assert its claim. The interest on the claims allowed amounts to some $8,800 per year. In the brief of appellant it is stated: "If the assets and revenues of this corporation are ample to satisfy all claims the question of priority would seem immaterial." The court found that the assets of the petroleum company were more than $600,000, and all debts, including the government's claim for taxes, would not exceed $250,000. Hence it would seem that the question of priority was entirely immaterial, and that the proceeding of the government was useless. It is in no wise prejudiced by the order of the court. There is no reason why it will not receive its taxes. To withhold payment further of claims established with no resulting benefit to the government would be an act of gross injustice, which no government should desire. We are satisfied that on the second question as well as the first the contention of the government is unsound, and that the court was entirely correct in its conclusion.

The order and judgment of the trial court is affirmed.