## BILLINGSLEY v. PARMENTER et al.

No. 27486.   Nov. 23, 1937.

Billingsley & Kennerly, for plaintiff in error.

Pryor & Sandlin, for defendants in error.

GIBSON, J. This action involves the foreclosure of laborers' liens upon an oil and gas mining lease, and particularly the question of the propriety of personal judgment against the owner of an undivided interest therein.

The plaintiff in error, C. L. Billingsley, the owner of an undivided one-third inter-

est in said lease, commenced the action in the district court of Hughes county against the defendants in error R. A. Holland, R. W. Parmenter, and F. O. Freeman for the appointment of a receiver to take charge of the operations on said lease. Holland filed his answer and cross-petition seeking foreclosure of a laborer's lien for work performed in the drilling of a well on the premises under the terms of an oral agreement with Parmenter and Freeman, partners, and then full owners of the lease, and allegedly joined in and assented to by Billingsley at the time, or after, he acquired his interest from said copartners.

The defendants in error J. L. James and D. A. Streater, by separate petitions in intervention, seek foreclosure of liens for labor performed in the drilling of said well.

After trial of the issues joined on the lien foreclosure proceedings, judgment was rendered against Billingsley, Parmenter, and Freeman in favor of cross-petitioner and the interveners for the amount of their lien claims, interest, and attorney fees, and decreed foreclosure of said liens upon the oil and gas lease. Billingsley alone has appealed.

It is admitted that the cross-petitioner and the interveners were entitled to foreclosure of their liens upon the particular leasehold here involved; but it is asserted that under the evidence they were not entitled to personal judgment against Billingsley for the amount of their respective claims.

The lien claimants contend that Billingsley was either a general partner or a mining partner of Parmenter and Freeman at the time the indebtedness was created, and therefore personally liable for said claims. That is the paramount question for our determination on this appeal, and the solution thereof depends entirely upon the evidence.

Although the present cause is one properly triable to a jury under the provisions of section 350, O. S. 1931, as an action for the recovery of money, it is one of equitable cognizance. Adwon v. Ketcham, 169 Okla. 428, 37 P. (2d) 432. A jury was called, but no general verdict as required by section 21, art. 7, Constitution, and section 370, O. S. 1931, was returned and none requested, and no objection taken to the failure of the court to so submit the cause. The issues were submitted upon special interrogatories alone; and the answers thereto were unfavorable to Billingsley on the question of partnership.

Under the foregoing circumstances, the conclusion is inevitable that the parties waived their right to a general verdict, and that the court called the jury to sit in a mere advisory capacity as to the facts in issue, and not for the purpose of returning a general verdict in the case. This was clearly within the powers of the trial court; and in such case the court may adopt or reject the conclusions of the jury. Gamel v. Hynds, 69 Okla. 204, 171 P. 920. The jury's findings in such case are merely advisory (Vose v. U. S. Cities Corp., 152 Okla. 295, 7 P. (2d) 132; Harris v. V. S. Cook Lbr. Co., 152 Okla. 7, 3 P. (2d) 694); and this applies as well in cases of equitable cognizance where the parties are entitled to a jury as a matter of right under section 350, supra, but waive the same. See Clark v. Ellison, 180 Okla. 630, 71 P. (2d) 609. In such case the answers of the jury are not binding upon the trial court nor are they binding upon this court on appeal. Id.

In such case our review of the evidence is governed by the equity rule and not by the rule applied in jury, or law, cases. Upon proper assignment questioning the sufficiency of the evidence, this court will examine and weigh the same, but will not disturb the judgment of the lower court unless it appears that said judgment is against the clear weight of the evidence. Adwon v. Ketcham, supra.

In the year 1934 the aforesaid Parmenter and Freeman owned a block of oil and gas leases in Hughes county. They employed the cross-petitioner Holland to drill a well for oil and gas upon the particular lease here involved. By letter to Parmenter and Freeman under date of September 24, 1934, Billingsley agreed to purchase from them a certain offset 40-acre lease for the sum of $500, to be paid upon completion of the well to a depth of 650 feet, or upon completion at a lesser depth in event oil or gas in paying quantities should be discovered. This letter was turned over to Holland by Parmenter and Freeman apparently as mere evidence of available funds for the payment of Holland's work to be performed on the well.

On January 14, 1935, when the well had reached a depth of 585 feet. all parties apparently believed that a producing sand

had been encountered. On that date Parmenter and Freeman were unable to pay Holland the sum then due under his contract, and, according to Holland's testimony, Parmenter, in company with Holland, proceeded to Billingsley for financial aid, or to collect the money mentioned in Billingsley's letter above mentioned.

At that meeting, which took place at the bank in which Billingsley was an officer, Billingsley, according to the testimony of Holland, declined to pay the sum requested, assigning as his reason the inability of Parmenter and Freeman to deliver good title to the offset 40-acre lease. Thereupon Parmenter offered to substitute for said 40-acre lease an undivided one-third interest in the lease upon which the well was located and here involved. In response to this offer Billingsley remarked: "I would rather have it." Parmenter was then instructed by Billingsley to give Holland a check for his work in full to date and that the check would be honored at the bank. The check was accordingly issued on that date, and honored, and charged to Parmenter's account.

Both Billingsley and Parmenter testified that the above-mentioned meeting did not occur. They testified that Billingsley paid Parmenter for the offset lease and that Holland was not present at the time of such payment. They further testified that no agreement was made to substitute a one-third interest in the lease and well for the offset 40 acres until January 26, 1936. at which time a written contract to that effect was entered into.

Aside from the foregoing testimony of Holland, there is no evidence in the record to indicate that Billingsley ever had an interest in the well other than his indirect interest as the owner, or potential owner, of the offset acreage; and there is no other evidence sufficient to lead Holland to believe that he owned an interest in the well or that he expected to pay out money other than for the purpose mentioned in the letter concerning the 40-acre lease. Holland did testify that Billingsley told him that he was paying out $650 on the well, but it is not shown when Billingsley made this statement. It is, however, clearly indicated that Holland in this testimony was referring to his first conversation with Billingsley when Holland was told that Billingsley expected to pay to Parmenter and Freeman only the sum mentioned in his letter.

In view of the record, Billingsley, under no circumstance, could have been a partner or joint adventurer with Parmenter and Freeman, nor could Holland have been led to believe as much, prior to January 14, 1936, when the alleged agreement to substitute properties in the Billingsley and Parmenter and Freeman contract took place. The work for which Holland here seeks to recover was all performed subsequent to the last-mentioned date, and prior to January 26, 1936. The claims of the two interveners arose prior to January 14, 1936.

It is contended by Holland and the other lien claimants that the alleged agreement to substitute the one-third interest in the well and lease for the 40-acre offset made Billingsley a partner with the original partners, Parmenter and Freeman, in the development. Wells v. Shriver, 81 Okla. 108, 197 P. 460.

The eighth paragraph of the syllabus in that case expresses the rule as follows:

"Where a partnership exists between two persons who are undertaking a joint venture to procure an oil and gas lease and develop the same and a third person joins in the venture with them, under an agreement that he is to have a specified interest in the lease and division of the profits, knowing the relationship which exists between the two, he thereby becomes a partner with each of the original partners in the joint venture."

Holland at all times was well aware of the exact terms of the contract between Billingsley and Parmenter and Freeman. Billingsley by that contract agreed as follows:

"I hereby agree to purchase the 40 acres above described at a price of $500, said $500 to be paid when the aforesaid well is drilled to a depth of 650 feet, or oil and gas is found in paying quantities at a lesser depth."

And it was further agreed that if the "oil sand * * * is found at a lesser depth than 650 feet then and in that event I agree to pay said $500 aforementioned on demand when this sand has been proven, at which time I am to receive an assignment of the oil and gas lease covering the above described 40 acres."

If this contract was actually changed by oral agreement as stated by Holland so that in lieu of the 40-acre lease Billingsley was to receive a one-third interest in the well and lease here involved. the contract alone, as revised, would be insufficient to constitute a partnership agreement.

This contract, as allegedly modified by a subsequent oral 'agreement, provided that Billingsley should have a one-third interest in the lease and the well in question. That was the extent of the contract. There was no other evidence from which to draw the conclusion that Billingsley was a mining partner or joint adventurer. He assumed no part in the management of the venture and had nothing to do with the operations; purchased none of the material and employed none of the labor. His contract, as allegedly modified, could have created no more than a cotenancy between him and Parmenter and Freeman. Parmenter and Freeman merely agreed to give him an interest in the well and lease for a specified sum.

In the case of Robinson Pet. Co. v. Black, Sivalls & Bryson, 138 Okla. 128. 280 P. 593, this court said that "the mere fact that an interest in the oil and gas lease is given to pay for the drilling of a well does not, in itself, constitute a mining partnership." To agree to assign an interest for a specified sum, in the 'absence of further circumstances indicating a mining partnership, cannot create such partnership. Billingsley paid his money for an interest in the lease, not for the operating expense. Parmenter and Freeman used the money for the latter purpose.

In the last-named case the court held, in the second paragraph of the syllabus, as follows:

"An owner of an oil and gas lease has a right to enter into a contract for the drilling of an oil 'and ' gas well, agreeing to give to the contractor an interest therein without forming a mining partnership. But if, in addition to entering into such contract, the owner buys material, exercises apparent control over the operations on the lease, and does other acts indicating that he is 'active in the developing, he will, at least, be estopped from denying the existence of a mining partnership, especially where those dealing with him have no notice· of the contract."

The foregoing decision clearly holds that mere ownership of an undivided interest in an oil and gas lease is insufficient to make of the owners thereof a mining partnership in the lease and the operations thereon. This decision follows the rule expressed in Carson v. Waller, 127 Okla. 186, 260 P. 72, and other cases there cited, which is as follows:

"A mining partnership or joint venture cannot exist unless there is a co-operation among the parties in the development of a lease for oil and gas, each agreeing to pay his part of the expense, and to share in the profits and losses."

While it may well be presumed that Billingsley would share in the profits, if any, there is no evidence that he was to share the expense or otherwise co-operate in the venture.

Assuming that Holland in his testimony was entirely correct concerning the aforesaid contract and the activities of Billingsley, the facts so related are insufficient to establish a mining partnership. Contrary to the suggestions in the briefs, Billingsley did nothing to mislead Holland or the interveners sufficient to create estoppel against him.

The judgment of the trial court is against the clear weight of the evidence upon the question of Billingsley's personal liability, and the same must therefore be reversed to that extent. In all other respects the judgment is affirmed.

OSBORN, C. J., and RILEY, PHELPS, and DAVISON, JJ., concur.