## ARKANSAS OIL & MINING CO. v. MURRAY TOOL & SUPPLY CO. et al.

### No. 12166.

Circuit Court of Appeals, Eighth Circuit.

April 27, 1942.

D. H. Howell and Travis Howell, both of Van Buren, Ark., for appellant.

Henry L. Fist, Joe T. Dewberry, and E. Lawton Bragg, all of Tulsa, Okl., and R. S. Wilson, of Van Buren, Ark., for appellees.

Before GARDNER, THOMAS, and RIDDICK, Circuit Judges.

GARDNER, Circuit Judge.

This appeal is prosecuted by the Arkansas Oil & Mining Company from an order adjudging it a bankrupt. The appellees, Murray Tool and Supply Company, E. A. Brammer, and Dave Maxwell, filed an involuntary petition in bankruptcy against appellant, alleging that within four months before the filing of the petition, and while insolvent, it committed acts of bankruptcy (1) in that it suffered and permitted Troy E. Scott, on the 17th day of March, 1941, to obtain a lien upon its property through legal proceedings by obtaining a judgment against it for the sum of $5,013.50, without having vacated or discharged said lien within thirty days from the date thereof, and without having taken steps to supersede the judgment, and that execution was issued and placed in the hands of the sheriff on this judgment on the 17th day of April, 1941; (2) in that, on the 18th day of April, 1941, it admitted in writing its inability to pay its debt and its willingness to be adjudged a bankrupt. This petition was filed May 20, 1941. On May 28, 1941, appellant filed its answer, denying that it committed the alleged acts of bankruptcy, and putting in issue the allegations with reference to the alleged indebtedness owed the petitioners and certain other creditors. The matter seems to have been referred to the referee for adjudication, and after hearing the referee entered its order adjudging the Arkansas Oil & Mining Company a bankrupt. In due time, on petition for review, the matter was brought on before the lower court, which determined the issues in favor of the petitioning creditors and confirmed and approved the order of the referee adjudging the appellant a bankrupt.

On this appeal reversal is sought on substantially the following grounds: (1) The trial court erred in holding that Murray Tool and Supply Company was a qualified creditor and not a partner of appellant; (2) the trial court erred in holding that the petitioning creditors had provable claims aggregating in excess of the value of securities held by them, more than $500; (3) the trial court erred in holding that appellant had committed the alleged acts of bankruptcy.

The claim of the Murray Tool and Supply Company is based upon a contract between it and appellant. There was no contention in the lower court that the Murray Tool and Supply Company was a mining partner engaged in a joint adventure with the appellant. That question can not therefore be urged here for the first time. Ginsberg v. Lindel, 8 Cir., 107 F.2d 721; Bachman v. McCluer, 8 Cir., 63 F.2d 580. In this state of the record, we are not disposed to consider this question further than to say that we have examined the contract and the testimony with reference to the claim and are clear that neither the contract nor the acts of the parties thereunder created a mining partnership between the appellant and the Murray Tool and Supply Company. United States Supply Co. et al. v. Andrews, 71 Okl. 293, 176 P. 967; Adkins v. George, 183 Okl. 591, 83 P.2d 818; Billingsley v. Parmenter et al., 181 Okl. 315, 73 P.2d 869. As the claim of the Murray Tool and Supply Company was properly allowed, there is no basis for the contention that the court erred in holding that the petitioning creditors had provable claims sufficient in amount to entitle them to sustain their petition.

Does the evidence sustain the holding that appellant, while insolvent, committed the alleged acts of bankruptcy? Under

the provisions of the Bankruptcy Act here controlling, Bankruptcy Act, § 1(15), Title 11 U.S.C.A. § 1(15), one is insolvent "whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts." The first act of bankruptcy charged is that of suffering and permitting Troy E. Scott to obtain a lien upon appellant's property through legal proceedings by obtaining a judgment. That judgment is alleged to have been entered on March 17, 1941, and execution issued thereon on the 17th of April, 1941. To constitute this an act of bankruptcy, appellant must have been insolvent within the meaning of the above quoted statute at the time of the entry of the judgment. We have searched the record and find no evidence directed to the financial condition of the appellant at the time of the entry of this judgment, nor at the time of the issuance of the execution. That testimony refers to the alleged financial condition of the appellant at the time of the hearing of the petition. Proof of insolvency at that time was not sufficient.

In Liberty National Bank v. Bear, 265 U.S. 365, 44 S.Ct. 499, 500, 68 L.Ed. 1057, the Supreme Court considered a contention that the lien of a judgment was void because recovered within four months prior to the filing of the petition in bankruptcy. The court held that a challenge to such a judgment could not be sustained unless it appeared not only that the judgment was recovered within four months prior to the filing of the petition, but also that the judgment debtor was insolvent when the lien was obtained. In the course of the opinion the court, among other things, said: "This section provides: 'That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt. * * *' It applies only to liens obtained in legal proceedings against a person who was 'insolvent' when the lien was acquired. If the debtor was then solvent the lien is not invalidated although it was obtained within four months prior to the filing of the petition in bankruptcy."

While the section there considered is not the one here involved, the provision with reference to insolvency is substantially the same. No inference arises from an adjudication in bankruptcy that the bankrupt was insolvent within the meaning of the act four months before he was adjudged such, or at any other prior date. Many contingencies might happen to reduce a person from a status of solvency to that of insolvency within a short space of time.

Insolvency, under the act here involved, must be determined according to whether or not the aggregate of a person's property at a fair valuation is sufficient to pay his debts. There is no specific finding as to the value of the aggregate of appellant's assets, either at the time of the commission of the alleged acts of bankruptcy, or at the time of filing the involuntary petition. True, there is a conclusion embodied in the referee's so-called findings, but it ought specifically to appear that this conclusion is based upon the essential elements constituting insolvency. The general orders in bankruptcy require that the referee, unless otherwise directed, "shall set forth his findings of fact and conclusions of law." Order 47, 11 U.S.C.A. following section 53. This has not been done. The evidence is not such as to compel a finding of insolvency either at the time of the commission of the alleged acts of bankruptcy or at the time of the hearing of the petition.

It remains to consider the charge that the appellant committed an act of bankruptcy in that on the 18th day of April, 1941, it admitted in writing its inability to pay its debts and its willingness to be adjudged a bankrupt. What we have said with reference to the insufficiency of the proof of insolvency is equally applicable to this charged act of bankruptcy, but the charge must fail for another reason. The alleged admission is contained in a letter written by the vice president of the company. It is first observed that this letter does not purport to be an admission by the Arkansas Oil & Mining Company, but is a statement of the writer, who says: "I am stating to you that as a majority stockholder of the Arkansas Oil & Mining

Company and as its vice president that the corporation is unable to pay these claims and that I, as such majority stockholder, am willing that the corporation be adjudicated a bankrupt * * *."

The admission, to be an act of bankruptcy, must include both the element of inability to pay debts and of willingness of the debtor to be adjudged a bankrupt, and it must be unqualified. But there is another fatal objection to this written admission. It does not appear to have been authorized either by the Board of Directors or by the stockholders. Such an admission can be made only by some corporate act, and an admission by an officer, whose power to bind the corporation by such admission is not shown, is insufficient. In re Gold Run Mining & Tunnel Co., D.C.Colo., 200 F. 162; In re Erie City Airport, D.C.Pa., 44 F.2d 673.

The order appealed from is therefore reversed and the cause remanded for further proceedings consistent herewith.