Donald B. KRAMER, as Trustee in Bankruptcy of the Estate of Maltec Designs, Inc., Plaintiff,

v.

MALCO, INC., and Murray Scheer, Defendants.

Civ. A. No. P-2546.

United States District Court
S. D. Illinois, N. D.

Jan. 20, 1964.

E. L. White, Kavanagh, Bond, Scully, Sudow & White, Peoria, Ill., for plaintiff.

Robert J. Clendenin, Peoria, Ill., Harry S. Gleick, Gleick, Strauss & Friedman, St. Louis, Mo., for defendant Malco, Inc.

MERCER, Chief Judge.

On January 17, 1962, Maltec Designs, Inc., a Missouri corporation, was adjudi-

cated a bankrupt in the United States District Court for the Eastern District of Missouri. Plaintiff, Donald B. Kramer, was appointed trustee in bankruptcy of the Maltec estate. Plaintiff filed this suit under the provisions of 60, sub. a of the Bankruptcy Act, 11 U.S.C. 96, sub. a, to recover alleged preferential payments of money made by the bankrupt within 4 months prior to the adjudication of the bankruptcy to defendant Malco, Inc., in the amount of $80,387.22.

At the close of the trial of the cause, Malco's motion for judgment was denied and the case is now before the court for decision. Malco is an Illinois corporation engaged in the distribution and sale of aluminum windows, doors, awnings and related products. All of Malco's shares are owned by Murray Scheer, Arthur Wagner and Lilyan Wagner, who are also the officers and directors of the corporation.

Prior to March 4, 1959, the Malco officers, in collaboration with one Clinton Jostad, opened two separate outlets for the sale of the Malco products in St. Louis, Missouri. On March 4, 1959, both outlets were merged and incorporated as Maltec Designs, Inc., the bankrupt. Maltec then engaged in the business of selling, installing and servicing aluminum windows, doors, awnings and related products until its adjudication in bankruptcy.

Scheer, Jostad and the Wagners were shareholders of Maltec, and Scheer acted as Secretary of that corporation until on or about December 8, 1961. Arthur Wagner became the Vice-President of Maltec on March 1, 1961, and continued in that capacity until on or about December 8, 1961.

Malco was the principal supplier of inventory and material used by Maltec in its operation. With respect to payments alleged as preferential, the following appears from the evidence: On December 17, 1961, the start of the 4 months period, Maltec was indebted to Malco in the amount of $27,357.65; between September 23, 1961 and January 17, 1962, shipments of merchandise were made by Mal-

co to Maltec in the amount of $63,893.31; between September 23, 1961, and January 17, 1962, Maltec made payments to Malco upon its account in the aggregate amount of $80,387.22; and as of January 17, 1962, the balance due to Malco upon its account was $4,817.25.

The evidence adduced tended to show that the bread and butter operations of Maltec were left to Jostad until November 21, 1961. Some time prior to that date, Jostad became interested in a competing company under the name of Weather Master, after which he steered business to Weather Master and away from Maltec. On the last mentioned date Jostad was stripped of all authority, and from November 21, 1961, to December 7, 1961, Scheer and Arthur Wagner took charge of the Maltec operations. On December 7, 1961, the other shareholders of Maltec disposed of their stock to Jostad, upon Jostad's promise to pay the balance owing by Maltec to Malco. When Jostad refused to pay that balance, a law suit was filed against Maltec. Bankruptcy followed.

To prove a voidable preference under Section 60, sub. a of the Bankruptcy Act, it must be established that there was a transfer of property of the bankrupt for the benefit of a creditor, that the transfer was made on account of an antecedent debt, that it was made at a time when the debtor was insolvent, that the creditor knew or had reasonable cause to believe that the debtor was insolvent and that the effect of such transfer is to enable the creditor to recover a greater percentage of his debt than other creditors in the same class. 11 U.S.C. 96, sub. a.

 The burden of proof as to each of those elements rests upon the trustee if he is to establish a voidable preference. Canright v. General Finance Co., 7 Cir., 123 F.2d 98; Cohen v. Sutherland, 2 Cir., 257 F.2d 737; Engelkes v. Farmers Cooperative Co., D.C., 194 F.Supp. 319.

 I conclude that the trustee has failed to prove that Maltec was insolvent when the payments were made to Malco. The evidence offered by the trustee was the bankruptcy schedules, a report of the

sale of Maltec assets by the trustee and an audit of Maltec's books for the fiscal year ended January 31, 1961, each of which was admitted in evidence, and five balance sheets prepared by Maltec's accountants. The court's ruling upon Malco's objection to the admissibility of the balance sheets was reserved.

█ I hold that the balance sheets, offered as plaintiff's exhibits 1 to 5, inclusive, are not admissible in evidence.

The federal statute provides in part:

" * * * any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter." 28 U.S.C. § 1732(a).

█ Records must not only be shown to have come from the files of the party to whom they relate, but they must otherwise be competent as evidence. Schmeller v. United States, 6 Cir., 143 F.2d 544, 550. The accountants who prepared these balance sheets were not called as witnesses. The instruments are the accountants' interpretation and summary of the information presumably supplied to them from the original business records of Maltec, but there is lacking any proof that the instruments themselves are an accurate summary of the original records upon which they are based. The federal act provides an exception to the hearsay rule, giving competency to otherwise incompetent evidence upon proof that the entries relied upon were made contemporaneously with the facts which they purport to record in the usual course of the business of the person whose records they are. These balance sheets do not meet that minimum safeguard. They are, at best, a hearsay summary of hearsay entries which would, upon adequate proof, be admissible, under the federal statute.

The original records of Maltec are not shown to be unavailable. In fact, the bankruptcy schedules suggest that the existence of such records is a fact. The books of the corporation were not offered in evidence.

Moreover, it must be borne in mind that these summaries are offered as evidence against a third party, not against the party whose records they purport to summarize. United States v. Potson, 7 Cir., 171 F.2d 495, and United States v. Freeman, 7 Cir., 167 F.2d 786, cert. denied 335 U.S. 817, 69 S.Ct. 37, 93 L.Ed. 372, are distinguished on that basis. In the former, the summaries admitted in evidence were shown to have been made by employees of the defendant in the regular course of his business, while in the latter an audit of the defendant's own books was admitted in evidence against the defendant. By contrast to the instant case, in each of those instances the defendant was protected both by his opportunity to cross examine the person who made the summary and by his opportunity to refute the credibility of the summary by producing his own books and records.

The decision in Gencarcella v. Fyfe, 1 Cir., 171 F.2d 419, is also of interest. In a personal injury case, a report of a policeman who had investigated the accident was held to be admissible as a business record to the extent that it was based upon the policeman's observations and personal knowledge, but not admissible as to hearsay statements made to the policeman by witnesses at the scene of the occurrence. Clearly, the taking of those statements was a part of the usual course of the officer's duty in investigating the occurrence. Although it is not so particularly articulated in the court's opinion, the inadmissibility of such statements rests upon the fact that the accuracy thereof could not be attested by the officer or by the existence of his report.

██ The insolvency to which Section 60, sub. a refers is insolvency at the

time when the payments were made. Cohen v. Sutherland, 2 Cir., 257 F.2d 737. A subsequent adjudication of bankruptcy does not prove insolvency of the debtor at a prior time when transfers of property were made. Liberty National Bank of Roanoke v. Bear, 265 U.S. 365, 44 S.Ct. 499, 68 L.Ed. 1057; Arkansas Oil & Mining Co., v. Murray Tool & Supply Co., 8 Cir., 127 F.2d 564. The schedules filed by the bankrupt which tend to show that the aggregate of Maltec's property was insufficient to pay its debts as of January 17, 1962, has no tendency to prove Maltec's insolvency on the dates prior to January 17 when the payments were made to Malco.

■■ The report of the sale of Maltec's assets by the trustee has no relevant bearing upon this critical issue of fact. The sale price of those assets under the stressed condition inherent in bankruptcy cannot be taken as indicative of the value of such assets prior to the bankruptcy adjudication and while Maltec was still being operated as a going business. Upon the issue of solvency, the determinative question is the fair market value of assets at the time when transfers of property were made, Arkansas Oil & Mining Co. v. Murray Tool & Supply Co., 8 Cir., 127 F.2d 564, valued as the property of a going business operation. J. W. Butler Paper Co. v. Goembel, 7 Cir., 143 F. 295; In re Bucyrus Road Mach. Co., 6 Cir., 10 F.2d 333.

■ Plaintiff's exhibit 10, being a report of an audit of Maltec's books for the fiscal year ended January 31, 1961, is subject to the same infirmities indicated in the discussion as to the admissibility of the Maltec balance sheets. Moreover, if this exhibit be taken at face value as showing a deficit balance as of January 31, 1961, it has no tendency to prove Maltec's insolvency in the period from September 17, 1961, to January 17, 1962.

Defendant adduced evidence tending to prove that the value of work in progress was never shown on Maltec's books, but, on the contrary, no entry was made on Maltec's books until each work project was completed. That evidence was not contradicted.

I hold that plaintiff failed to sustain his burden of proof upon the essential element of Maltec's insolvency at the time when the payments to Malco were made.

The Court's findings of fact and conclusion of law are included in the above memorandum.

Judgment is ordered in favor of the defendant, plaintiff to pay the court costs.