Gwennie LIVINGSTON, Administratrix of the Estate of Ella B. Bonham, Deceased, Plaintiff in Error,

v.

Leslie C. BONHAM, Defendant in Error.

No. 37432.

Supreme Court of Oklahoma.

March 12, 1957.

J. T. Bailey, Cordell, for plaintiff in error.

Jess C. Wesner, Cordell, for defendant in error.

PER CURIAM.

On April 22, 1948, Ella B. Bonham, a widow, mother of Gwennie Livingston, and Leslie C. Bonham, conveyed certain real estate situated in Washita County to the defendant, reserving unto herself a life estate therein and all the rents, profits and income therefrom during her lifetime.

On June 13, 1953 the defendant, his wife and Ella B. Bonham jointly executed an oil and gas lease on said land for a bonus consideration of $5,145 and $1 per acre per year delay rental. The bonus was paid by draft drawn by one Cooper West, a lease broker. It was made payable to Ella B. Bonham, the defendant, Leslie C. Bonham, and defendant's wife, Georgia M. Bonham. All the payees endorsed the draft and the proceeds therefrom were deposited to the personal bank account of the defendant.

Ella B. Bonham died in April, 1955 and plaintiff was appointed administratrix of her estate. On December 13, 1955 the plaintiff, as such administratrix, brought this action in the District Court of Washita County against the defendant seeking the recovery of the bonus payment of $5,145. The petition alleged in substance the above facts, and further alleged that Ella B. Bonham was the owner of the proceeds from the draft given in payment of the bonus consideration; that defendant had received and appropriated same to his own use and benefit; that at the time of the lease transaction Ella B. Bonham was well advanced in years, infirm, physically and mentally weak, incapable of managing her business affairs, and that defendant was conducting her business affairs for her. The petition further alleged that the defendant was indebted to plaintiff as administratrix of the estate in the sum of $5,145 for money had and received by him from the proceeds of the draft. The prayer was for judgment in said sum, together with interest thereon at 6 per cent per annum from July 1, 1953. Defendant's amended answer, in substance, is a general denial and allegations of his ownership of the proceeds from the draft by virtue of an oral contract with Ella B. Bonham, except admitting the conveyance of the real estate to him, the reservation of the life estate, the execution of the oil and gas lease, and the receipt by him of the proceeds from the draft.

At the trial the defendant assumed the burden of proof. He offered in evidence a warranty deed from Ella B. Bonham to him containing a reservation of a life estate, and all issues, rents, profits and income from the land conveyed. There was also received in evidence a non-participating mineral deed, dated July 22, 1950, from Leslie C. Bonham and Georgia M. Bonham, husband and wife, and Ella B. Bonham, a widow, to Russell F. Bonham, conveying an undivided 5/155 interest in and to all the oil, gas and other minerals in and under the land covered by the above referred to warranty deed, and it was stipulated that like mineral deeds were executed by defendant to plaintiff and Rena Maxwell, Pearl Smith and Clark Bonham, sisters and brother of the defendant. Defendant was permitted to testify, over plaintiff's objections, that he and decedent had discussed the sale of an oil and gas lease covering the real estate conveyed to him by decedent; that it was agreed between them that he was to receive as his the case bonus paid, and decedent was to receive the delay rentals; that a sale was made to one Cooper West for a cash bonus payment of $5,145 and delay rentals of $1 per acre per year; that Cooper West drew a draft in the presence of defendant and decedent, making it payable to defendant, his wife and the decedent; that decedent endorsed the draft, gave it to defendant and told him to deposit it in his personal bank account as his.

Cooper West, called on behalf of defendant, testified, over plaintiff's objections, that he purchased an oil and gas lease from defendant and Ella B. Bonham covering the particular land herein involved; that the lease provided for a cash bonus of $5,145 and delay rentals annually of $1 per acre; that in the kitchen of decedent's home the lease was signed by decedent and he drew a draft in the amount of $5,145 payable to defendant, defendant's wife and Ella B. Bonham; that Mrs. Bonham informed him she could see no reason for her name being on the draft since Les (the defendant) was getting the money; that he explained to her that she held a life estate in the property, and that he would have to include her name in the draft as

a payee; that the cancelled draft showed her name thereon. The cancelled draft was received in evidence.

Evidence was submitted by plaintiff relative to the incompetency of decedent at the time of the execution of the lease and receipt of the draft. This evidence was in direct conflict with evidence submitted on behalf of defendant. Judgment was for the defendant, from which the plaintiff appeals.

In presenting this appeal plaintiff first contends the trial court erred in permitting defendant to testify concerning his alleged oral agreement with decedent, both concerning the deed to the farm and concerning the bonus payment. In support thereof she calls our attention to 12 O.S.1951 § 384, sometimes referred to as the "Dead Man's Statute", and argues that the defendant is in the same position as a plaintiff asserting a cause of action acquired immediately from the decedent and against her estate. On the other hand, defendant contends he is not in the position of a person who has acquired title to the cause of action immediately from the deceased person, but his testimony was directed to a defense against a cause of action asserted by the plaintiff against him, and that said statute is not applicable. That portion of Section 384, supra, invoked by plaintiff is as follows:

> "No party to a civil action shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where such party has acquired title to the cause of action immediately from such deceased person; * * *."

■ It is a well-worn maxim that "the reason of the law is the life of the law". The purpose of this statute is to silence the voice of one of the parties to a litigated proceeding where death has hushed into eternal stillness that of the other; but it must be construed in a reasonable manner, and one compatible with the purpose of its enactment. It cannot be said that it intends to render incompetent as a witness for all purposes the surviving party to the proceeding. The question has been before this court many times, and the cases are numerous wherein this court has stated the above section is in derogation of the common law and must be strictly construed in favor of the witness. In such cases we have held that the statute does not make a party an incompetent witness to testify in his own behalf in respect to a transaction with a deceased person where such party only seeks to defend against a cause of action asserted against him.

Herein, the cause of action is asserted by the legal representative of the estate of a deceased person and against the defendant and rests on a transaction had by the deceased and the defendant. Defendant is not asserting a cause of action. He had none to assert. He had been paid the money based upon a transaction with the deceased. He had no claim or demand against the estate, nor was he attempting to enforce one. The statute did not prohibit him from testifying relative to his transaction and conversation with the decedent out of which the alleged cause of action arose. In Clammer v. Fullerton, Okl., 259 P.2d 823, we held that the inhibition of the statute is leveled at persons asserting a cause of action not, as here, against persons asserting a defense to a cause of action.

■ Plaintiff also objects to the testimony of Cooper West relating to his conversation with decedent concerning the inclusion of her name as a payee in the draft, urging that such testimony was not made in the presence of the plaintiff, was therefore hearsay and inadmissible. The cases of Trent v. Trent, Okl., 270 P.2d 953, and Shaw v. Shaw, Okl., 282 P.2d 748, cited by plaintiff, do not support her argument. Suffice to say, in those cases the testimony therein objected to was offered by plaintiff as a statement made by deceased grantor to

some of the plaintiffs, out of the presence of the defendant grantee, after the date of the execution of the deed to defendant and in derogation of the grant. Such testimony was properly excluded as hearsay. In the instant case it cannot be seriously contended that the testimony now objected to would not have been admissible against Ella B. Bonham, if alive, and the plaintiff in this action, as a statement or admission against interest. In 31 C.J.S., Evidence, § 334, pp. 1108, 1109, it is said:

"A statement of a decedent, which was a declaration or admission against his interest and which would have been admissible if offered against him, is admissible against his executor or administrator or other person claiming under him. Admissions of a deceased owner of personal property in disparagement of his title, to whomsoever made, are competent against his personal representatives and next of kin or legatees. * * *."

We are, therefore, constrained to hold that such testimony was competent, relevant and material, if for no other purpose, as an admission against interest of the deceased, Ella B. Bonham, and therefore admissible against her legal representative.

■ Plaintiff finally contends that the trial court erred in holding that Ella B. Bonham was competent in 1953, and that she entered into a valid oral contract with the defendant. Basically, her position is that the general findings of the trial court relative to the issues of mental incompetency of decedent is contrary to the evidence and fundamentally wrong.

■ This court has repeatedly held that where a jury is waived the trial court's findings are to be given the same force and effect as the verdict of a properly instructed jury. No useful purpose could be gained by a lengthy résumé of the conflicting evidence herein, relating to decedent's mentality. The credibility of the various witnesses and weight and value to be given to their testimony is for the jury or for the trial court on waiver of a jury, and conclusions there reached will not be disturbed on appeal, unless appearing clearly to be based upon caprice or to be without foundation. Lowe v. Hickory, 176 Okl. 426, 55 P.2d 769.

We have carefully considered the whole record and all the evidence pertaining to the issues and find that the trial court's conclusions are reasonably supported by the evidence.

The judgment is affirmed.

WELCH, C. J., and DAVISON, HALLEY, JOHNSON, WILLIAMS, BLACKBIRD, JACKSON and CARLILE, JJ., concur.

The Court acknowledges the aid of the Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was written by Commissioner Jean R. Reed, and approved by Commissioners J. W. Crawford and James H. Nease, the cause was assigned to a Justice of this Court for examination and report to the Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.