**Thomas C. CONWAY, Plaintiff**

v.

**UNITED STATES of America, Defendant,**

Viola W. Conway, Holyoke National Bank, Service Plan Banking Company, Additional Defendants on Counter-claim.

**Civ. A. No. 54–580.**

United States District Court
D. Massachusetts.

Sept. 16, 1958.

C. Keefe Hurley, Boston, Mass., for plaintiff.

Anthony Julian, A. A. Caffrey, Boston, Mass., Andrew F. Oehmann, James P. Garland, Lyle M. Turner, Richard T. Mulcahey, Attys., Dept. of Justice, Washington, D. C., for U. S.

William J. Millane, Holyoke, Mass., for Holyoke Nat. Bank.

Abraham Greenspan, Holyoke, Mass., for Viola Conway and Service Plan Banking Co.

FRANCIS J. W. FORD, District Judge.

This is an action under 28 U.S.C.A. § 1346(a)(1) to recover alleged overpayments of Federal income tax for the calendar years 1940, 1942, 1943, 1944, 1945, 1947, and 1948. The United States counterclaims for the unpaid balances of the deficiencies assessed for those years.

Plaintiff is a dentist who has been practicing in Holyoke since 1929. The first Tax return ever filed by plaintiff was filed in 1935, although since 1929 he had been earning each year sufficient income so that he should have filed a tax return. His tax returns for the years 1939 through 1948 showed net income and tax liability as follows:

| Year | Net Income | Tax Due |
|------|-----------|---------|
| 1939 | $1,205.45 | $   5.73 |
| 1940 | 1,716.22 | 28.06 |
| 1941 | 1,315.00 | 51.24 |
| 1942 | 1,395.00 | 161.68 |
| 1943 | 1,703.96 | 217.26 |
| 1944 | 2,100.00 | 248.00 |
| 1945 | 2,525.08 | 365.76 |
| 1946 | 2,993.10 | 382.70 |
| 1947 | 3,760.83 | 539.01 |
| 1948 | 4,189.65 | 469.28 |

For the years 1934 through 1938 the total tax liability reported was small and plaintiff paid at most a few dollars in taxes.

The only financial record maintained by plaintiff was a day book which contains a list of patients, work performed for them, the amount charged, and the amount of payment received. Plaintiff says that this is a complete record of all the money received from his dental practice. There was no record of expenses, which plaintiff said he paid in cash, and there was no record of income received from other sources.

In 1949 agents of the Internal Revenue Service began an investigation of plaintiff's affairs in conjunction with an auditing of his returns for the years 1939 through 1948. The investigation disclosed a gross understatement of plaintiff's income in his returns for those years. The income reported was less than the amount of the receipts shown in the doctor's day books. No report was made in the returns of numerous other items of income received by plaintiff during these years—interest on numerous substantial deposits in savings banks, on Loans made to the Service Plan Banking Company and to individuals, and on Unit-

ed States Treasury bonds, dividend earnings on plaintiff's security holdings, fees and salary received by him as a director of the Service Plan Banking Company. Investigation also disclosed that during these years plaintiff purchased a total of $100,000 in United States government bonds, made numerous bank deposits ($20,000 in 1942) and made substantial loans to the Service Plan Banking Company and to friends.

On the basis of the facts uncovered by this investigation and using the net worth and source and application of funds method, the Internal Revenue Service reconstructed plaintiff's income for these years and assessed additional taxes and fraud penalties as follows:

| Year | Additional Tax | Fraud Penalty | Total |
|---|---|---|---|
| 1939 | $ 542.77 | $ 271.39 | $ 814.16 |
| 1940 | 1,281.82 | 640.91 | 1,922.73 |
| 1941 | 1,173.20 | 586.60 | 1,759.80 |
| 1942 | 18,916.59 | 9,458.20 | 28,374.86 |
| 1943 | 8,264.06 | 4,132.03 | 12,396.09 |
| 1944 | 23,950.94 | 11.975.47 | 35,926.41 |
| 1945 | 23,544.71 | 11,772.36 | 35,317.07 |
| 1946 | 9,610.05 | 4,805.02 | 14,415.07 |
| 1947 | 21,059.56 | 10,529.78 | 31,589.34 |
| 1948 | 8,013.78 | 4,006.89 | 12,020.67 |
| Total | $116,357.48 | $58,178.74 | $174,536.22 |

After the investigation was begun, plaintiff employed the services of a firm of certified public accountants to audit his accounts and records. Except for one aspect to be discussed below, these accountants are in agreement with the Internal Revenue Service's reconstruction of plaintiff's income. Certain payments have been made by plaintiff on his tax liability since 1950 and additional amounts have been seized by the United States. As a result the government has received more than the tax liability computed by plaintiff's accountants and plaintiff seeks to recover this excess. However, the full amount of the deficiency assessed has not been paid for any of these years and it is for these remaining unpaid balances that the United States seeks judgment on its counterclaim.

In their reconstruction of plaintiff's income, the revenue agents first determined that the plaintiff's net worth in 1939 was approximately $21,000, consisting of securities and a small savings bank deposit. The increase in net worth was determined for each subsequent year and an itemized list was made of income from all explained sources such as interest, dividends, director's fees and salaries. The unexplained income, that is, the difference between the increase in net worth and the total of the explained items, was attributed to professional income and the tax liability was computed on that basis.

The only real issue with respect to these computations is as to the correctness of the amount of plaintiff's net worth in 1939. Plaintiff's explanation is that in addition to the $21,000 in verifiable security holdings and bank deposits, he had in 1939 a cash hoard of approximately $55,000. He says that even before 1929, while he was still a student, he had saved part of his earnings and continued to do so after he began the practice of dentistry, that this practice was successful and his annual income gradually rose so that in the years just before 1939 he was making approximately $10,000 a year. Most of this money

was saved since he continued to live in his parents' home and kept his living expenses down to about $1,000 a year. He says that from time to time he would place cash in a drawer in the sideboard in the dining room and that by 1939 these hoardings had accumulated to approximately $55,000.

The difference between the computations of the revenue agents and those of plaintiff's accountants is based on the fact that the latter accepted plaintiff's story of the $55,000 and also accepted his day books as a correct statement of his professional income. Any difference between the increase in net worth and the explained sources of income was attributed by them to withdrawals from this cash hoard.

Plaintiff's story of this cash accumulation cannot be accepted. In itself it is difficult to believe that a man of plaintiff's education and business ability would pile up such a huge sum in a sideboard drawer. There is not a scrap of evidence to corroborate his story that any cash hoard at all existed. His sole explanation for keeping such large sums in this way, namely, that savings banks would not accept deposits during those years, falls in the light of the testimony of the officers of several banks in Holyoke and its vicinity that during those years they did in fact readily accept new deposits up to the legally allowable limits. Moreover, the records of the account which he did have show numerous withdrawals of small amounts from time to time, a proceeding inconsistent with the story that he had large sums in cash readily at hand in a sideboard drawer at home. It must be found that the correct amount of plaintiff's net worth in 1939 was that determined by the revenue agents.

■ Plaintiff further contends that it was improper for the government to use the net worth method of determining his income because he maintained adequate financial records which the agents disregarded. The only financial records he kept were the office day books. These admittedly reflected only income from his dental practice and there was no record maintained by him of the income from numerous other sources discovered by the agents. Further, these day books did not constitute an adequate record of his professional income, since from the financial standpoint they contained only a record of certain amounts received and no record of expenses incurred in his practice. The government, moreover, was not bound to accept plaintiff's statement that these books did show all payments made to him in the course of his dental practice, but was free to look beyond them and reject them as inaccurate when other available evidence indicates they were not a complete and accurate record. Holland v. United States, 348 U.S. 121, 132, 75 S.Ct. 127, 99 L.Ed. 150. Analysis of these books by the agents would have added nothing to the investigation, since there is nothing in them to explain the difference between the increase in plaintiff's net worth from year to year and the amount of income explainable from known sources, including the sums shown in the day books themselves. Once plaintiff's story of the amount of his accumulated savings in 1939 is rejected, and in the absence of any other explanation of the increase in his net worth, it becomes perfectly reasonable to conclude that the day books do not contain the full record of his receipts from his professional practice.

■■ Plaintiff also disputes the contention of the government that his returns for the tax years in question, which admittedly substantially understated his income, were fraudulent, and hence argues that the assessment of fraud penalties was not justified. Of course, as plaintiff argues, the mere fact that the returns understated income does not prove fraud. But a consideration of all the circumstances surrounding these returns compels a conclusion that the finding of fraud was correct. Prior to 1934 plaintiff filed no return at all, even though for several years he had had income sufficient to require the filing of a return. From 1934 on, his returns were

prepared for him by an attorney now dead. Although plaintiff testified that in the years up to 1939 his annual income rose to a level of about $10,000, these returns consistently showed an income of about $1,100 or $1,200, resulting in only a negligible tax payment. Although plaintiff each year had a day book which he claims was an accurate record of his receipts, he never showed this to his attorney but simply gave him an arbitrary figure for the amount of his gross receipts, a figure which had no relation to the sum shown in the day book. After the attorney's death in 1943 plaintiff made out his own returns. These followed the pattern of the earlier returns. The only income shown was an amount for receipts from his professional practice apparently chosen arbitrarily without reference to the day book which plaintiff claims was the correct record of these receipts. None of these returns ever made any disclosure of the items of income from other sources such as interest, dividends and director's fees. It is quite evident that plaintiff made no effort to give a correct statement of his income but merely went through the motions of filing a return based on arbitrarily selected figures which would show only a negligible tax liability. Clearly his understatement of his income year after year was a knowing and intentional misrepresentation made for the purpose of evading his true tax liability.

On the merits plaintiff cannot prevail and the government is entitled to judgment on its counterclaim.

■ A further ground exists on which, apart from the merits of the claim, the plaintiff's action must be dismissed. Since the trial of this case the Supreme Court has held that a taxpayer must pay the full amount of any income tax deficiency assessed by the Commissioner of Internal Revenue before he may sue for a refund under 28 U.S.C.A. § 1346(a)(1). Flora v. United States, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165. As has been pointed out, the full deficiency assessed has not been paid for any of the years involved here and hence

plaintiff has no standing to bring his present action.

Judgment will be entered for defendant dismissing the plaintiff's complaint. Judgment will be entered for defendant on its counterclaim.