George REEVES, Jr., Plaintiff,

v.

UNITED STATES of America, Defendant.

GAS & ELECTRIC SERVICE CO., a Corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civil Nos. 044, 045.

United States District Court
D. Nebraska.

Dec. 16, 1958.

Frederick S. Cassman, of Abrahams & Kaslow, Omaha, Neb., for plaintiffs.

Deane E. McCormick, Jr., Dept. of Justice, Washington, D. C., and Robert H. Berkshire, Asst. U. S. Atty., Omaha, Neb., for defendant.

ROBINSON, Chief Judge.

George Reeves, Jr., and Gas & Electric Service Co. are suing to recover $6,117.10 and $2,857.20 paid by them respectively as fraud penalties and interest under Section 293(b), Title 26, U.S.C.A., Internal Revenue Code of 1939. This section is set out in a footnote.[1]

The two cases, consolidated for trial, arose in this manner: Reeves (whom we will by and large refer to as the taxpayer, for the corporation is his wholly owned enterprise), after a lengthy investigation by agents from the Internal Revenue Service, was confronted with glaring deficiencies in his personal returns and those of the corporation and, during numerous conferences with the agents, was questioned about the several items of unreported income as well as his general accounting practices for which there apparently were no mutually acceptable answers. Desirous of terminating the matter partly in recognition of this fact and partly because of specific

---

1. Internal Revenue Code of 1939:

"Sec. 293. Additions to the Tax in Case of Deficiency

\*     \*     \*     \*     \*

"(b) *Fraud.* If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency), shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d) (2). 53 Stat. 88. (26 U.S.C.A. § 293.)"

findings by the revenue audit, Reeves agreed to the proposed adjustments of the returns in question and paid the additional assessment. But while the underlying computations which produced the adjustments were not formally contested, Reeves did not concede their validity; and since the government insisted that such discrepancies in the returns tantamounted to fraud on the part of the taxpayer, justifying the imposition of the fraud penalties, these suits were instituted. When the government in support of its allegation of fraud introduced the adjusted figures, the taxpayer challenged their propriety, their accuracy, and at times both and took exception to significance which the government urged should be given them.

At the outset of the trial this Court ruled that it was incumbent upon the government to show by clear and convincing evidence that the deficiencies in tax were due to fraud with the intent to evade tax. Additional study has affirmed the correctness of the ruling. Hargis v. Godwin, 8 Cir., 221 F.2d 486, 489. There are countless cases setting forth what the burden entails, and it is hardly necessary at this time to recite the authority underscoring the obvious fact that such a burden is fraught with difficulty. Fraud is never presumed and cannot be lightly inferred. Fraud, as used in Section 293(b), means an actual and intentional wrongdoing and the intent required is the specific purpose to evade income tax believed to be owing. Owens v. United States, D.C., 98 F.Supp. 621, 627, affirmed 8 Cir., 197 F.2d 450. Hence the question resolves itself into one of fact as to whether the deficiencies were the result of a willful effort to evade an income tax liability.

In this connection it is appropriate to note our concurrence with the taxpayer that his acknowledgment of a deficiency would not, standing alone, sustain the government's burden of proving the requisite fraud. Reherman v. C. I. R., 6 Cir., 240 F.2d 953, 954. Nor would the failure of the taxpayer to contest the adjustments made in determining the deficiencies bar him from challenging their propriety or accuracy when the adjustments are offered as probative of the fraud. It follows that while the taxpayer does not have to assume any burden of disproving the correctness of the adjustments, to the extent that he does show the determinations to be erroneous the government's burden of proving fraud as a basis of imposing the penalties becomes increasingly difficult.

We turn now to a discussion of the evidence. The testimony reveals that Reeves settled in Norfolk, Nebraska, by happenstance shortly after the termination of the Second World War. He seemed to be impressed with the opportunities for establishing a propane gas business there, which was a new enterprise in the region. His assets were limited and his prior business experience in this field was minimal; but his abilities were great and his hopes high. It was noted that he had no formal training in accounting and his only contact with it was limited to maintaining sales slips and accounts receivable. The corporation was organized at a time when materials and appliances of any kind were in short supply. While the commencement of a small business is precarious under normal conditions, Reeves' problems were increased in the early months of operation by having constantly to travel in search of goods which he could sell.

It appears that while the business was incorporated on November 21, 1945, the appropriate date fixing the actual commencement of the business is a matter of proper dispute. The revenue agent chose January 1, 1946, as that date. The taxpayer, relying on the advice of his accountant, chose to report any business transacted before September 1, 1946, on a personal basis. Plausible arguments can be found for treating the government's position as arbitrary, but alternate dates are subject to similar criticism. The main activity of Reeves, besides organizing the business and constructing the building in which to operate, was as an agent for Boyles Stores selling stoves. It is not unreasonable for

him, under the circumstances, to consider this a personal activity and certainly there is no evidence suggesting that the filing of the returns at the time was done with the fraudulent intent to evade tax.

Managed by Reeves, with the assistance of truck drivers and an office girl or two (to whom the bookkeeping was largely entrusted during the period in question), the propane gas business developed on an informal, if not to say irregular, basis. It is unnecessary to review all the testimony here. Inventories were admittedly overstated (although by how much is subject to the uncertainties which arise in any effort to reconstruct a situation years later). Yet the practice of exaggerating assets was obviously motivated by a desire to increase net worth for credit purposes. There is some question remaining whether the opening inventory was actually as low as the agent's adjusted figures reflect. The absence of receipts and his failure to accept certain merchandise and tools may partially account for this discrepancy.

Adjustments in depreciation made by the agent also are the sources of genuine dispute, and we find the disallowance of several items (such as the actual cost of the 1946 Dodge Truck and the cost of building the bulk plant at Norfolk) subject to real doubt. But accepting the propriety of the adjustments, we nevertheless find that the evidence falls far short of indicating fraud with the intent to evade tax.

There is no doubt the advances-to-officers account was abused, but the explanation for failing to set up and pay any salary is justified, for there was a legitimate concern over conserving the corporation's cash position. We agree with the taxpayer that the propriety of such an account and any fraudulent intent with regard to it must be gathered from all of the circumstances existing at the time the corporation was organized. Certainly the continuation of the practice became improper far sooner than is acknowledged by the taxpayer, but in view of the initial reasonableness of the accountant's advice and the uncertainty as to when the point of abuse was reached, we cannot fairly say that we find any fraudulent intent on the taxpayer's part in either setting up or continuing the account for the period he did.

Disallowance of business expenses is invariably a troublesome matter, for a wide difference of opinion will certainly exist between the taxpayer and the government over the essential nature of an item or the purpose for the expense. But particularly in the context of a fraud case, the use of a flat percentage rate against the accounts is unsatisfactory. Viewing the circumstances of the taxpayer and the conditions under which he was obliged to operate, we are inclined to be more tolerant of his claims than is the government. Admittedly, some personal items were erroneously charged to the corporate expense account rather than to Reeves' loan account or paid by him directly, but there is no evil in sending his personal bills to the office, and the number and size of those improperly paid by the company rather diminish the significance of their presence. We cannot find here any substantial evidence pointing to a deliberate false entry with the intent to evade tax.

The matter of rental on the house is perhaps the only really gross evidence of oversight in the whole case. It appears that an accounting for such an item of income simply did not occur to either the taxpayer or his accountant. The reason given is that the house was built and outfitted for the purpose of advertising the taxpayer's products. Frequently as it was utilized for this purpose, such an exclusive motive is frankly suspect. Certainly outright negligence is here manifest, but viewing the evidence as a whole we are not satisfied that it establishes a fraudulent intent.

When the government concluded its case in chief, we expressed serious doubt as to whether the deficiencies, either conceded or established, were the result of fraud with the intent to evade tax. This opinion was strengthened at the conclusion of the taxpayer's case in chief and now, from a searching examination

of the record as a whole, our opinion has grown into a positive conviction. In the persuasion that the evidence only shows that the deficiencies were due to ignorance or negligence, whether slight or great, and did not clearly and convincingly establish that they were the result of fraud with the specific purpose of evading tax, we must hold that the burden of the government was not sustained and that the penalties which were imposed were unjustified.

Judgment, accordingly, will be for the plaintiffs in the amounts as stipulated. This memorandum will serve, unless counsel otherwise request, as the findings of fact and conclusions of law herein. Plaintiffs' counsel will prepare and submit a suitable order within twenty days.