**Velma MELINDER, Individually and as Executrix of the Estate of Roy J. Melinder, Deceased, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Civ. No. 66–329.**

United States District Court
W. D. Oklahoma.

Feb. 21, 1968.

in her individual capacity and as Executrix of the Estate of Dr. Melinder. The Plaintiffs will hereinafter be referred to as "Taxpayer" and the Defendant as "Government." The Taxpayer objected to certain evidence offered at trial, and these objections will be disposed of before proceeding to the merits.

The Taxpayer has objected to testimony of two Government witnesses, Internal Revenue Agents Rausch and Nathman, relative to admissions made to them by Dr. Melinder. The objection is based on the Oklahoma "Dead-man Statute," 12 O.S. § 384[1] which affects the competency of testimony of witnesses offering evidence concerning transactions or communications with a person since deceased. It now appears that testimony of these agents concerning admissions by Dr. Melinder must be excluded from the Court's consideration of the case.

At trial, the Court reserved the question presented by the Taxpayer's objection and called for briefs. The Government, in its brief, argues that the statute is not applicable because it does not proscribe testimony offered in defense of a cause of action.[2] However, the Government is only a nominal defendant in this suit. In reality, it is the complaining party. The reason it is a complaining party lies in the nature of tax assessments. The fraud penalty in question is deemed an addition to income taxes incurred by the Taxpayer. 26 U.S.C. § 6659(a).[3] It is therefore nothing more than an income tax. When an assessment of income tax is made, it has the effect of a judgment arising from a debt owed by the Taxpayer to the United States, which is the position

Gus Rinehart, Rinehart, Morrison & Cooper, Oklahoma City, Okl., for plaintiff.

John O. Jones, Justice Department, Fort Worth, Tex., Givens L. Adams, Asst. U. S. Atty., Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

This action for refund of fraud penalties assessed and paid was brought by the widow of Roy J. Melinder, M. D.

---

**1.** "No party to a civil action shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where such party has acquired title to the cause of action immediately from such deceased person; * * *"

**2.** Livingston v. Bonham, 308 P.2d 657 (Okl.1957).

**3.** "(a) *Additions treated as tax.*—Except as otherwise provided in this title —(1) The additions to the tax, additional amounts, and penalties provided by this chapter shall be paid upon notice and demand and shall be assessed, collected, and paid in the same manner as taxes; * * *"

taken by the United Sates Supreme Court in Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1934):

"Once the tax is assessed the taxpayer will owe the sovereign the amount when the date fixed by law for payment arrives. Default in meeting the obligation calls for some procedure whereby payment can be enforced. The statute might remit the government to an action at law wherein the taxpayer could offer such defense as he had. A judgment against him might be collected by the levy of an execution. But taxes are the lifeblood of government, and their prompt and certain availability an imperious need. Time out of mind, therefore, the sovereign has resorted to more drastic means of collection. The assessment is given the force of a judgment and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt. * * * Thus the usual procedure for the recovery of debts is reversed in the field of taxation. Payment precedes defense, and the burden of proof, normally on the claimant, is shifted to the taxpayer. The assessment supersedes the pleading, proof and judgment necessary in any action at law, and has the force of such a judgment. * * * But these reversals of the normal process of collecting a claim cannot obscure the fact that after all what is being accomplished is the recovery of a just debt owed the sovereign."

■ It is manifest that the fraud penalty here involved is an income tax, has been assessed by the Government, and has the force and effect of a judgment. Although this suit was instituted by Taxpayer for refund of the assessed penalty, it is plain that the "reversals of the normal process of collecting a claim" establish the Government's real position in this case as a claimant. Moreover, the Government has the burden herein of proving its case, which in other cases is normally on the complainant. Davis v. Commissioner of Internal Revenue, 184 F.2d 86, 22 A.L.R. 2d 967 (Tenth Cir. 1950) and see discussion regarding burden of proof infra. When the parties are properly aligned, the Oklahoma "Dead-man Statute" applies to the competency of the agent's testimony regarding communications had personally with Dr. Melinder, who is now deceased, insofar as such communications relate to the Government's attempt to collect the fraud penalty in controversy.

■ The Taxpayer also objected to the testimony of Owen Austin concerning the manner in which Dr. Melinder handled cash and checks received in the course of his medical practice, but it appears that Austin is not in any way connected with this litigation. As the "Dead-man Statute" reaches only parties to an action, Taxpayer's objection to the competency of this witness' testimony is overruled. Jones Trucking Co. v. Jenkins, 313 P.2d 530 (Okl.1957).

The Taxpayer has also objected to a summary (Exhibit 9) prepared by the Government relating to certain expenditures alleged to have been made by Dr. Melinder, on the ground that this summary was based on hearsay and the documents from which it was prepared are not in evidence or available at the trial for examination. The summary shows amounts paid to various businesses, banks, insurance companies, etc., and if admitted would tend to show expenditures greatly in excess of reported gross income. The information was obtained by the Government from the records of the payees. It was obtained in the course of its investigation of Dr. Melinder's tax returns. None of the records from which the summary was prepared were offered in evidence and the Government has made no indication of their availability.

■ The Courts favor summaries of evidence where they materially reduce the burden of analyzing a mass of complex factual data. However, the summary itself is not evidence and in order

that it may be admitted to consideration in the decision of the case, the facts which it summarizes must be in evidence, or available at the trial.[4] The Government relies heavily on United States v. Mortimer, 118 F.2d 266 (Second Cir. 1941) to support its contention that the summary is admissible. However, the Mortimer case is not here in point. The court in the Mortimer case allowed a summary of public records prepared under the supervision of an independent accountant on the bases that (1) trial processes would bring out the evidence summarized in any event, (2) the preparation of such evidence would be unduly burdensome on the public records office involved, and (3) such information was equally available to both parties to the litigation. The Court has not been shown that the evidence covered by the Government summary has been brought out in the trial or that it is available to the Taxpayer.

No other theory for admission of the summary has been offered by the Government, however, the Court has investigated the applicability of 28 U.S.C § 1732 relating to business records.[5] It is clear that the summary cannot be admitted on the authority of the business records statute cited because the summary was not made within a reasonable time after the date of the transaction it includes, there being lapses of two to five years. Working papers and investigative reports prepared for trial normally do not constitute admissible evidence.[6] The Taxpayers' objection to Exhibit No. 9 is sustained.

The Court will now consider the merits of the case. To justify the imposition of the fraud penalty assessed pursuant to 26 U.S.C. § 6653(b),[7] the Government has the burden of establishing the Taxpayer's fraudulent intent with respect to the tax returns giving rise to the deficiencies determined.

4. Professor Wigmore states that, "Most Courts require, as a condition, that the mass thus summarily testified to shall, if the occasion seems to require it, be placed at hand in court, or at least be made accessible to the opposing party, in order that the correctness of the evidence may be tested by inspection if desired, or that the material for cross-examination may be available * * *" IV Wigmore on Evidence, § 1230 pp. 434–435. See also In re Bell Tone Records, Inc., 91 F.Supp. 642 (N.J.1950) and Yoffe v. United States, 153 F.2d 570 (First Cir. 1945).

5. § 1732 provides:
   "(a) In any court of the United States * * * any writing or record * * * made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business * * * within a reasonable time thereafter."

6. Hartzog v. United States, 217 F.2d 706 (Fourth Cir. 1954), agent's working papers and notes not admissible because they were not the product of any method or system which would guarantee their accuracy; Kramer v. Malco, 225 F.Supp. 344 (N.D.Ill.1964); Williams v. United

States, 323 F.2d 90 (Tenth Cir. 1963). The availability of the records from which the summary is prepared is a prerequisite to admission of the summary. In re Bell Tone Records, Inc., 91 F.Supp. 642 (N.J.1950); Hoyer v. United States, 223 F.2d 134 (Eighth Cir. 1955). Where the records are available, the agent's testimony summarizing them is admissible. Yoffe v. United States, 153 F.2d 570 (First Cir. 1946). A Bureau of Mines report on an explosion prepared pursuant to statutory requirement held admissible in Moran v. Pittsburgh-Des Moines Steel Co., 183 F.2d 467 (Third Cir. 1950), even though it contained hearsay evidence and conclusions of the investigator. However, this case has been twice rejected by the Fifth Circuit, Chapman v. United States, 194 F.2d 974 (Fifth Cir. 1952), cert. den. 344 U.S. 821, 73 S.Ct. 19, 97 L.Ed. 639; Matthews v. United States, 217 F.2d 409, 50 A.L.R. 2d 1187 (Fifth Cir. 1954), as being inconsistent with Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719 (1942).

7. "Fraud.—If any part of any underpayment (as defined in subsection (c)), of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment."

This intent may be shown by circumstantial evidence,[8] and direct proof is not necessary.[9] When the Government presents evidence which will support an inference of fraud, this burden is satisfied.[10] Evidence of consistent, substantial understatements of income will support such an inference.[11] In some cases, this showing, alone, has been held to be sufficient proof of fraud.[12] However, there are abundant cases which require something more than a showing of consistent, substantial understatements of income for the reason that they conceive the burden of proof which the Government must meet is one of "clear and convincing" proof.[13] This apparent conflict of the cases is reconcilable if the method of examining the evidence and determining its proper effect is considered. As stated, the Government has the burden of establishing fraud and does so by showing that the understatements of income were substantial and consistent. The Taxpayer must then rebut the inference of fraud raised by this evidence.[14] The Taxpayer may offer evidence which has a bearing on the state of his mind at the time when the returns were filed indicating a different intent[15] or an absence of fraudulent intent[16]. When the Taxpayer offers credible evidence tending to rebut the inference of fraud raised by the Government's evidence, then the requirement that the Government's proof be "clear and convincing" shifts the burden of going forward with the evidence to the Government. The Government must then meet the Taxpayer's contention that the inference of fraud arising from consistent, substantial understatements of income is not correct. On this basis, most of the cases involving determination of fraudulent intent can be harmonized.

The parties have stipulated that Taxpayer's original income tax returns for 1957, 1958 and 1959 were a gross understatement of the Taxpayer's tax liability for these years, as subsequently determined by audit. The Government's Exhibit 10, a schedule showing gross receipts, deductions and personal exemp-

8. Owens v. United States, 98 F.Supp. 621 (W.D.Ark.1951), affirmed 197 F.2d 450 (Eighth Cir. 1952).

9. Battjes v. United States, 172 F.2d 1 (Sixth Cir. 1949).

10. Rogers v. Commissioner of Internal Revenue, 111 F.2d 987 (Sixth Cir. 1940); Shahadi v. Commissioner of Internal Revenue, 266 F.2d 495 (Third Cir. 1959); Kurnick v. Commissioner of Internal Revenue, 232 F.2d 678 (Sixth Cir. 1956).

11. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), a criminal case; Owens v. United States, supra, Note 8; United States v. Procario, 356 F.2d 614 (Second Cir. 1966), cert. den. 384 U.S. 1002, 86 S.Ct. 1923, 16 L.Ed.2d 1015 (1966), a criminal case; Cohen v. Commissioner of Internal Revenue, 266 F.2d 5 (Ninth Cir. 1959); Cefalu v. Commisioner of Internal Revenue, 276 F.2d 122 (Fifth Cir. 1960).

12. Kurnick v. Commissioner of Internal Revenue, supra, Note 10; Factor v. Commissioner of Internal Revenue, 281 F.2d 100 (Ninth Cir. 1960); Schwarzkopf v. Commissioner of Internal Revenue, 246 F.2d 731 (Third Cir. 1957). No case is found where the consistent, substantial understatements were the *sole* evidence offered or considered. In the cases cited, the court simply did not find the taxpayer's excuses credible.

13. Merritt v. Commissioner of Internal Revenue, 301 F.2d 484 (Fifth Cir. 1962) and Toledano v. Commissioner of Internal Revenue, 362 F.2d 243 (Fifth Cir. 1966) are representative cases.

14. Ries v. United States, 172 F.Supp. 929 (E.D.Penn.1959) explains how the burden of proof shifts to the taxpayer and what the taxpayer must do to meet it.

15. Jones v. Commissioner of Internal Revenue, 259 F.2d 300 (Fifth Cir. 1958); Cirillo v. Commissioner of Internal Revenue, 314 F.2d 478 (Third Cir. 1957).

16. Wisely v. Commissioner of Internal Revenue, 185 F.2d 263 (Sixth Cir. 1950); Reeves v. United States, 168 F.Supp. 720 (Neb.1958); Mitchell v. Commissioner of Internal Revenue, 118 F.2d 308 (Fifth Cir. 1941); Ehlers v. Vinal, 253 F.Supp. 58 (Neb.1966); First Trust & Savings Bank of Davenport, Iowa v. United States, 206 F.2d 97 (Eighth Cir. 1953). This last case is criticized in Stolzfus v. United States, 264 F.Supp. 824 (E.D.Penn.1967) with regard to the true test of intent.

tions, taxable income and income tax according to the original returns, the Taxpayer's amended returns, and the Internal Revenue audit, indicates that the gross understatement of the Taxpayer's income for these years arises principally from the omission of approximately one-half of the gross receipts from the original returns.

As it appears from this evidence that the Taxpayer omitted substantial portions of his gross income from his tax returns for a period of three years and that the amount of the omission in each year is approximately the same, the Court finds that the Taxpayer consistently and substantially understated income for the years in question. The Government has therefore established an inference of fraudulent intent.

The Taxpayer has sought to rebut this inference by presenting evidence to the effect that Dr. Melinder during these years was an alcoholic and that his judgment was thereby impaired, that he had domestic problems, that his medical practice was so large that he was personally busy to the point of distraction, that he made no effort to conceal income[17], and that he prepared the tax returns in question according to an approved method.

The evidence offered with respect to Dr. Melinder's alcoholism is not entirely satisfactory. Depositions by the two doctors who treated Dr. Melinder are not in agreement that he was an alcoholic and depositions of former employees and business associates tend to refute this contention. The Taxpayer has introduced a hospital record of Hillcrest Medical Center, Tulsa, Oklahoma, covering the period 1959–1962, which shows eleven entries relating to hospitalization of Dr. Melinder for periods ranging from overnight to several days. The

diagnosis shown on most of these entries is cerebral atrophy of undetermined origin and alcoholism or acute alcoholism. The deposition of Dr. Osher, who treated Dr. Melinder at Hillcrest in 1962, indicates that he definitely considers that Dr. Melinder's judgment was impaired at that time by reason of alcoholism. Some evidence of drinking to excess prior to 1959 appears in the depositions of Dr. Melinder's former employees and the owners of Franklin Hospital in Claremore, Oklahoma.

Dr. Melinder's wife testified that she instituted an action of divorce against her husband in 1960 and was separated from him for about a month. She also said that as one of the conditions of dropping the divorce action, her husband allowed her to handle his office matters. She indicates that his records were not in proper order at the time she entered the office.

Both the logbooks and the testimony taken on deposition indicate that Dr. Melinder's patient load was high and sometimes exceeded 100 patients per day.[18] However, in the opinion of his colleagues, Dr. Melinder competently managed his professional practice and his reputation as a physician and surgeon in the community seems to have been high.

On cross-examination, Internal Revenue Agent Rausch testified that Dr. Melinder indicated to him that he had prepared his income tax returns on the basis of bank deposits and check disbursements, which method had been previously used by him and approved by the Internal Revenue Service. Agent Rausch stated that this method is acceptable if properly done. While the Court has previously ruled that statements of Dr. Melinder cannot be admitted because of

---

17. The justification of non-concealment was helpful to the taxpayer in First Trust & Savings Bank of Davenport, Iowa v. United States, supra, note 16, not helpful in Owens v. United States, supra, note 8. The excuse of distraction convinced the court in Wisely v. Commissioner of

Internal Revenue, supra, note 16, but not in Owens v. United States, supra, note 8.

18. A vital factor under the circumstances in Wisely v. Commissioner of Internal Revenue, supra, note 16.

the Dead-man Statute, 12 O.S. § 384, this is a matter asserted in defense and therefore comes within the exception enunciated in Livingston v. Bonham, 308 P.2d 657 (Okl.1957).

According to the evidence and stipulations of the parties, Dr. Melinder engaged a Certified Public Accountant to review his records and prepare amended returns shortly after the Internal Revenue Service began its audit in 1960. A portion of the taxes due in addition to the tax shown on the original return was paid prior to assessment of the deficiencies and penalties. There is testimony to the effect that Dr. Melinder cooperated with the examining agents and provided them with his office records and bank statements (although there is some conflict as to the degree of his cooperation with respect to certain bank records). The factor of cooperation during an internal revenue audit has been considered relevant to the question of fraudulent intent.[19]

Evidence with respect to the Taxpayer's financial records shows that there was no internal control of collections from patients[20]. These collections constituted the sole source of Dr. Melinder's gross receipts from which the income tax deficiencies were computed[21]. Cash and checks received in the office from patients were entered in the logbook (daily record of patient visits and collections) by the receptionist and turned over to Dr. Melinder at the end of each day. The daily receipts were totaled and agreed with the logbook. Amounts received in the mail were recorded in the logbook, but were not received by the receptionist. At irregular intervals, Dr. Melinder would give the receptionist checks and currency to deposit; the bank made up the deposit slip and returned a duplicate to the receptionist, who gave it to Dr. Melinder[22]. There is evidence that some payments were made out of cash receipts before deposit, but it apparently was not Dr. Melinder's practice to do so.[23] The amount of gross receipts for 1957, 1958 and 1959 as determined by the audits of both Mr. Rausch and Mr. Kennedy were not significantly different; there is no gross variation from year to year.

The Taxpayer introduced a statement by a former employee to the effect she had embezzled $4,500.00 during 1955 and 1956, but there is no evidence or contention that any similar defalcation occurred subsequently.

While the office procedures for accounting for cash receipts left many opportunities for the abstraction of funds or the failure to record receipts in the logbook, it is not apparent that any substantial amount was omitted from the logbooks. It is apparent that the logbooks for 1957, 1958 and 1959 are substantially accurate records of the Taxpayer's gross receipts for those years.[24]

With respect to the above evidence tending to rebut the Government's inference of fraudulent intent, the Court finds that the Taxpayer made no effort to conceal his income in his basic records and that he utilized an approved method (bank statement method) in preparing the tax returns in question. This latter finding, however, does not mean that the Taxpayer proceeded correctly in applying that method, a matter which will shortly be discussed. The evidence of alcoholism during the years 1959 through 1960 is not convincing, nor does the

19. Toledano v. Commissioner of Internal Revenue, supra, note 13; Reeves v. United States, supra, note 16; Stoltzfus v. United States, supra, note 16; Koscove v. Commissioner of Internal Revenue, 225 F.2d 85 (Tenth Cir. 1955); Conway v. United States, 168 F.Supp. 656 (Mass.1958).

20. Testimony of Mr. Kennedy, C.P.A.

21. Testimony of Internal Revenue Agent Rausch.

22. Deposition of Dr. Melinder's employees, Merritt, Miller and Mueller.

23. Deposition of Mueller.

24. Non-concealment of income in taxpayer records was important, from the taxpayer's point of view, in First Trust & Savings Bank of Davenport, Iowa v. United States, supra, note 16; Carter v. Campbell, 264 F.2d 930 (Fifth Cir. 1959); and Ries v. United States, supra, note 14.

Court consider reasonable the inference that Dr. Melinder erred in preparing his tax returns because of his large practice or domestic problems.

The evidence that the Taxpayer did not conceal his income in his basic records and that he utilized an approved method for preparing his returns raises an inference of lack of fraudulent intent. It is therefore necessary to consider the evidence of the Government which is in addition to the consistent, substantial understatements of income.

Agent Rausch testified he was able to reconcile the bank deposits with a ledger card listing cash receipts and cash disbursements, but that he was unable to reconcile the bank deposits with the logbook. In fact, he eventually determined the deficiencies assessed on the basis of the greater amount of receipts shown in the logbook. Dr. Melinder made entries in the logbook and also on the patient ledger cards. He required that the day's receipts be totaled and agree with the logbook.[25] From this evidence it is reasonable to infer that Dr. Melinder knew that the logbook contained the total of monies received by him for services rendered his patients. There is some evidence that cash received from patients was not deposited but used to pay employees' salaries, utilities bills, insurance premiums, and automobile repairs,[26] but there is no admissible evidence as to the magnitude of such payments. In addition, there is evidence that this practice was not usual or routine.[27] No explanation is offered for the gross discrepancy between cash received and cash deposited. As the cash received each day was totalled and the total submitted to Dr.

Melinder, he must have had a general idea of what each day of medical practice would bring in. In reviewing the transcript of the logbook for 1957,[28] the Court notes that the monthly total receipts varied from a low of about $4,300.00 to a high of about $5,700.00. The transcripts of the logbooks for 1958 and 1959 tell a similar story.[29]

Dr. Melinder accounted for his expenditures in the same way he reported his gross income, through his bank statements. Receipts and expenditures according to his bank statements were accurately reflected in the original tax returns.[30] However, there is no logbook of expenses, as there was in the case of income, and the Court has no means of determining if these are all of Dr. Melinder's expenses. Perhaps the same reasons that impelled him to omit income also impelled him to omit expenses.[31]

The evidence with respect to Dr. Melinder's professional competence during the years 1957 through 1959 is unanimous to the effect he was a capable physician carrying on a successful practice.[32]

In the Court's view, the only additional evidence of the Government bearing on Dr. Melinder's intent is that he must have been aware of the fact that he was taking in a large amount of money, by reason of his logbook. However, to calculate his gross income, he chose to use his bank statement, a method he had used previously.

One court has said that cooperation with Internal Revenue agents is indicative of an absence of fraudulent intent.[33]

---

25. Depositions of Merritt, Miller, and Mueller.

26. Deposition of Mueller.

27. Deposition of Mueller.

28. Government's Exhibit 1.

29. Government's Exhibits 2 and 3.

30. Testimony of Agent Rausch.

31. In the case of Owen v. United States, supra, note 8, and Bukowski v. United

States, 136 F.Supp. 91 (S.D.Tex.1955), the fact that the doctors involved kept meticulous track of expenses was considered important in that it cast doubt on the credibility of not being able to keep track of income.

32. Depositions of Dr. Osher, Dr. Gordon, Mueller, Steed and Harrington.

33. Toledano v. Commissioner of Internal Revenue, supra, note 13.

That subsequent good conduct negatives an inference of previous bad conduct is a doubtful hypothesis. The theory of the fraud penalty is that it tends to compensate the Government for the greater enforcement efforts to which it is put by reason of the taxpayer's misconduct.[34] Perhaps a consideration of subsequent cooperation can be justified on that basis. Here, on the same day the Internal Revenue Agent visited his office and informed him that his returns were greatly in error, the Taxpayer engaged a Certified Public Accountant to review his records and ultimately prepare correct returns. The amended returns were in fact filed about a month and a half after the agent's initial visit, and a substantial portion of the additional taxes was then paid. Such conduct is not wholly consistent with a predetermined intent to defraud, although it does not likewise indicate a complete absence of intent at the time the original returns were filed.

The Government's additional evidence indicates that the Taxpayer should have known he had far greater income than he reported. This fact can infer either that the reporting of lesser income was intentional or negligent. Given the Taxpayer's conduct subsequent to Agent Rausch's visit, the Court is inclined towards the latter inference.

The Court, therefore, from a careful consideration of the admissible evidence and the pertinent authorities, finds and concludes that the Government has not clearly and convincingly established the Taxpayer's fraudulent intent either by affirmative indications [35] or by affirmative acts.[36]

Accordingly, judgment should be rendered for Plaintiffs. Counsel for Plaintiffs will prepare an appropriate judgment for the Court.

---

34. Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1937).

35. The test used in Stolzfus v. United States, supra, note 16.

36. A test of specific fraudulent intent, a doctrine which many courts have borrowed from Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1942), a criminal tax evasion case.